## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE ESTATE OF EWELL E. LONG, BY ITS PERSONAL REPRESENTATIVE, CAROL A. KEISER-LONG,<br><br>Plaintiff,<br><br>v.<br><br>WILMINGTON SAVINGS FUND SOCIETY, FSB; BROADRIVER III, LP; AND COOK STREET MASTER TRUST III,<br><br>Defendants. | C.A. No. 25-358-MN |

## OPENING BRIEF IN SUPPORT OF
## DEFENDANT WILMINGTON SAVINGS FUND SOCIETY, FSB'S
## <u>MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>

**K&L GATES LLP**

*/s/ Steven L. Caponi*
Steven L. Caponi (No. 3484)
Robert K. Beste (No. 3931)
Matthew B. Goeller (No. 6283)
Michael J. Vail (No. 6994)
600 N. King Street, Suite 901
Wilmington, DE 19801
Phone: (302) 416-7000
steven.caponi@klgates.com
robert.beste@klgates.com
matthew.goeller@klgates.com
michael.vail@klgates.com

Dated: May 29, 2025

*Attorneys for Defendant Wilmington Savings Fund Society, FSB*

# TABLE OF CONTENTS

I.      NATURE AND STAGE OF PROCEEDINGS ................................................................ 1

II.     SUMMARY OF ARGUMENT ..................................................................................... 1

III.    STATEMENT OF FACTS ........................................................................................... 2

IV.     LEGAL STANDARD ................................................................................................. 3

V.      ARGUMENT ............................................................................................................ 3

        A.      Securities Intermediary Is Not A Proper Defendant to Plaintiff's Claim ............. 3

        B.      The U.C.C. and General Principles of Tort Law Protect Securities
                Intermediary, as Agent or Bailee, from the Estate's Claims ................................ 8

        C.      Under U.C.C. Section 8-115, Securities Intermediary Cannot Be Liable for
                Plaintiff's Adverse Claim to Financial Assets Held on Behalf of Its
                Customer ............................................................................................................... 9

                1.      New York Law Governs the Estate's Claims Against Securities
                        Intermediary ............................................................................................... 9

                2.      The Estate's Claims Are "Adverse Claims" Under Section 8-115 .......... 10

                3.      The Exceptions to Section 8-115's Protections Against Adverse
                        Claims Are Inapplicable .......................................................................... 13

        D.      Federal Banking Law Preempts Plaintiff's Claim ............................................. 14

                1.      The McCarran-Ferguson Act Does Not Apply ....................................... 17

VI.     CONCLUSION ........................................................................................................ 19

# TABLE OF AUTHORITIES

**Cases**

*AEI Life LLC v. Lincoln Benefit Life Co.*,
   892 F.3d 126 (2d Cir. 2018) .........................................................................................13

*Amegy Bank Nat'l Ass'n v. Deutsche Bank Alex.Brown*,
   619 F. App'x 923 (11th Cir. 2015) ...............................................................................14

*Alvin v. Suzuki*,
   227 F.3d 107 (3d Cir. 2000) ...........................................................................................3

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................................3

*Barnett Bank of Marion Cnty., N.A. v. Nelson*,
   517 U.S. 25 (1996)................................................................................................15, 17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................................3

*Cantero v. Bank of Am., N.A.*,
   602 U.S. 205 (2024)................................................................................................15, 16

*Centifanti v. Nix*,
   865 F.2d 1422 (3d Cir. 1989) .........................................................................................3

*COR Clearing, LLC v. Calissio Res. Grp., Inc.*,
   2017 WL 5157607 (D. Neb. Nov. 6, 2017) .................................................................5, 9

*COR Clearing, LLC v. Calissio Res. Grp., Inc.*,
   918 F.3d 579 (8th Cir. 2019) ..........................................................................................6

*Est. of Breslin v. U.S. Bank Nat'l Ass'n*,
   2025 WL 676454 (D. Minn. Mar. 3, 2025) ...................................................................6

*Est. of Cappelli v. U.S. Bank Nat'l Ass'n*,
   2025 WL 676453 (D. Minn. Mar. 3, 2025) ...................................................................6

*Est. of Hopfinger v. U.S. Bank Nat'l Ass'n*,
   2025 WL 676445 (D. Minn. Mar. 3, 2025) ...................................................................6

*Est. of Jacobs v. U.S. Bank Nat'l Ass'n*,
   2025 WL 676372 (D. Minn. Mar. 3, 2025) ...................................................................6

*Est. of Malkin v. Wells Fargo Bank, N.A.*,
   379 F. Supp. 3d 1263 (S.D. Fla. 2019) ..........................................................................7

*Est. of Malkin by Guarnero v. Wells Fargo Bank, NA*,
2022 WL 2285884 (11th Cir. June 23, 2022) ........................................................12

*First Nat'l Bank of E. Arkansas v. Taylor*,
907 F.2d 775 (8th Cir. 1990) .................................................................15, 19

*Humana Inc. v. Forsyth*,
525 U.S. 299 (1999) ..........................................................................17

*In re AXA Equitable Life Ins. Co. COI Litig.*,
2022 WL 3018104 (S.D.N.Y. July 29, 2022) .............................................4

*In re Cir. All., Inc.*,
228 B.R. 225 (Bankr. D. Minn. 1998) ..................................................5

*In re Tuscany Energy, LLC*,
581 B.R. 681 (Bankr. S.D. Fla. 2018) .................................................14

*In re USA United Fleet, Inc.*,
559 B.R. 41 (Bankr. E.D.N.Y. 2016) ..................................................5

*NationsBank of N. Carolina, N.A. v. Variable Annuity Life Ins. Co.*,
513 U.S. 251 (1995) .....................................................................16, 18

*New England Mut. Life Ins. Co. v. Caruso*,
535 N.E.2d 270 (N.Y. 1989) ..........................................................13

*Phillips v. Cnty. of Allegheny*,
515 F.3d 224 (3d Cir. 2008) ............................................................3

*PHT Holding II LLC v. N. Am. Co. for Life & Health Ins.*,
674 F. Supp. 3d 532 (S.D. Iowa 2023) ...............................................4

*Pine Belt Enterprises, Inc. v. SC & E Admin. Servs., Inc.*,
2005 WL 2469672 (D.N.J. Oct. 6, 2005) .............................................10

*Sabo v. Metro. Life Ins. Co.*,
137 F.3d 185 (3d Cir. 1998) ...........................................................17, 18

*SEC v. National Securities, Inc.*,
393 U.S. 453 (1969) ......................................................................18

*Sec. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*,
234 B.R. 293 (Bankr. S.D.N.Y. 1999) ...............................................9

*Sun Life Assurance Co. of Canada v. Bank of Utah*,
2023 WL 7449951 (N.D. Ga. Nov. 6, 2023) .........................................4

*Union Labor Life Ins. Co. v. Pireno*,
    458 U.S. 119 (1982) ...................................................................................................18

*United Servs. Auto. Ass'n v. Muir*,
    792 F.2d 356 (3d Cir. 1986) .....................................................................................19

*United States v. Dep't of Ins.*,
    66 F.4th 114 (3d Cir. 2023) .....................................................................................17

*U.S. Dep't of Treasury v. Fabe*,
    508 U.S. 491 (1993) ...................................................................................................18

*Watters v. Wachovia Bank, N.A.*,
    550 U.S. 1 (2007) .......................................................................................................16

*Wells Fargo Bank, N.A. v. Est. of Malkin*,
    278 A.3d 53 (Del. 2022) .............................................................................7, 8, 11, 12, 13

**Statutes**

12 U.S.C. § 24 (Seventh) ...........................................................................................15, 16

12 U.S.C. § 25b(b) ...........................................................................................................15

12 U.S.C. §§ 1461–1468c ...............................................................................................15

18 Del. C. § 2704(b) .................................................................................................. *passim*

Fla. Stat. § 627.404(4) ............................................................................................... *passim*

N.Y. Banking Law § 134 ................................................................................................10

Pub. L. No. 111-203, 124 Stat. 1376 .............................................................................15

U.C.C. § 8-102(a)(7) .....................................................................................................2, 4

U.C.C. § 8-102(a)(14) ....................................................................................................1, 4

U.C.C. § 8-115 cmt. 1 .......................................................................................................5

U.C.C. § 8-115 cmt. 2 ...................................................................................................8, 10

U.C.C. § 8-115 cmt. 5 ........................................................................................5, 10, 14, 16

U.C.C. § 8-503 ..............................................................................................................4, 8

**Regulations**

12 C.F.R. § 7.4010(a) ......................................................................................................15

**Rules**

Fed. R. Civ. P. 12(b)(6).................................................................................................3

**Other Authorities**

Restatement (Second) of Torts § 235 (1965)..................................................................8

## I.    NATURE AND STAGE OF PROCEEDINGS

Defendant Wilmington Savings Fund Society, FSB ("Securities Intermediary[1]) respectfully submits this Opening Brief in Support of its Motion to Dismiss.  The Court should dismiss this action ("Action") because Plaintiff fails to state a valid claim.

## II.    SUMMARY OF ARGUMENT

Plaintiff alleges she is the personal representative of the Estate of Ewell E. Long (the "Estate") and filed this Action seeking to recover the benefit proceeds (the "Benefit Proceeds") paid under a life insurance policy (the "Policy") insuring the life of Ewell E. Long (the "Insured"). Plaintiff alleges the Policy is void *ab initio* because, at the time of issuance, the Policy was not supported by an insurable interest in the Insured's life.  FAC ¶ 9.[2]  Plaintiff therefore claims that she is entitled to the entire Benefit Proceeds under either 18 Del. C. § 2704(b) ("Section 2704(b)") or Fla. Stat. § 627.404(4) ("Section 627.404(4)").  FAC ¶¶ 60, 66.  The Court should dismiss Plaintiff's Complaint against Securities Intermediary, which is being sued solely due to ordinary banking activities undertaken in its capacity as a securities intermediary, for failure to state a claim upon which relief can be granted.  Plaintiff fails to state a claim for two independent reasons, each of which is a sufficient basis to dismiss the Complaint with prejudice.

1.    Plaintiff's claim fails because Securities Intermediary is not a proper defendant under Delaware's Section 2704(b) or Florida's Section 627.404(4), which concern only the "benefits" of a policy.  Securities Intermediary has never had any interests of its own in the Benefit

---

[1] When a bank like Wilmington Savings Fund Society, FSB serves as a securities intermediary, it does not act in its individual capacity, has no financial interest in the assets held in a securities account maintained by the bank, and acts solely in a ministerial capacity for third-party customers who beneficially own such assets.  Any life insurance policy held by a securities intermediary on behalf of a customer, such as Cook Street Master Trust III, as well as any proceeds, are held in such a securities account.  *See, e.g.*, 6 Del. C. § 8-102(a)(14)(ii).

[2] Plaintiff's Complaint is filed at D.I. 1-1 as Exhibit A to Defendants' Notice of Removal (D.I. 1).

Proceeds here, as it has never had an interest in, does not have, and could not have exercised any dominion over, the Benefit Proceeds, and Plaintiff concedes that Securities Intermediary does not have the Benefit Proceeds. *See, e.g.*, FAC ¶ 57. Plaintiff therefore cannot recover the Benefit Proceeds from Securities Intermediary under Section 2704(b) or Section 627.404(4).

2.      Even if the Court concludes that Securities Intermediary may be a proper defendant under Delaware's Section 2704(b) or Florida's Section 627.404(4), federal banking law— including the Home Owners' Loan Act, under which Securities Intermediary is chartered as a federal savings bank—preempts Plaintiff's claim because of the significant interference to Securities Intermediary's exercise of its power to act as an intermediary on behalf of an "entitlement holder." U.C.C. § 8-102(a)(7).

Securities Intermediary also hereby joins in and incorporates by reference as if fully set forth herein the arguments set forth in Defendants BroadRiver III, LP's ("BroadRiver") and Cook Street Master Trust III's ("CSMT III") Motion to Dismiss the Complaint, filed in this Action on April 24, 2025.

For all these reasons, and because Plaintiff cannot cure these defects, the Court should dismiss the Complaint against Securities Intermediary without leave to amend.

## III.    STATEMENT OF FACTS

Plaintiff asserts a claim for "Recovery of Insurance Proceeds Due to Lack of Insurable Interest Under Delaware Law" (FAC at 17) and cites Delaware's Section 2704(b). *Id.* ¶ 60. Plaintiff asserts a second claim, in the alternative, for "Recovery of Insurance Proceeds Due to Lack of Insurable Interest Under Florida Law" (*id.* at 18) and cites Florida's Section 627.404(4). *Id.* ¶ 66.

After the Insured died on January 13, 2022 (*id.* ¶ 38), Securities Intermediary, a federal savings bank (*see id.* ¶ 4), submitted a claim on behalf of CSMT III for the Benefit Proceeds, for

the benefit of CSMT III.  *See id.* ¶¶ 56-57.

## IV.  <u>LEGAL STANDARD</u>

A complaint is subject to dismissal under Fed. R. Civ. P. 12(b)(6) when it does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A sufficient pleading "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]  Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.* at 555.

The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Determining whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.*

A district court may dismiss the complaint with prejudice if "an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).  "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).  The "court may properly deny leave to amend where the amendment would not withstand a motion to dismiss." *Centifanti v. Nix*, 865 F.2d 1422, 1431 (3d Cir. 1989).

## V.  <u>ARGUMENT</u>

### A.  <u>Securities Intermediary Is Not A Proper Defendant to Plaintiff's Claim</u>

Delaware's Section 2704(b) states:

If the beneficiary, assignee or other payee under any contract made in violation of this section receives from the insurer any **benefits** thereunder accruing upon the death, disablement or injury of the individual insured, the individual insured or his or her executor or administrator, as the case may be, may maintain an action to recover such **benefits** from the person so receiving them.

18 Del. C. § 2704(b) (emphasis added).

Florida's Section 627.404(4) states:

If the beneficiary, assignee, or other payee under any insurance contract procured by a person not having an insurable interest in the insured at the time such contract was made receives from the insurer any **benefits** thereunder by reason of the death, injury, or disability of the insured, the insured or his or her personal representative or other lawfully acting agent may maintain an action to recover such **benefits** from the person receiving them.

Fla. Stat. § 627.404(4) (emphasis added).

Securities Intermediary acts solely as a securities intermediary, as defined in the U.C.C., on behalf of an "entitlement holder." U.C.C. § 8-102(a)(7). A securities intermediary merely maintains securities accounts on the entitlement holder's behalf, U.C.C. § 8-102(a)(14), and the assets held by a securities intermediary are not its property. U.C.C. § 8-503. These concepts and the nature of Securities Intermediary's limited role are reflected in Article 8 of the U.C.C., which provides the legal framework for what is called the indirect holding system. A central tenet of Article 8 is that financial assets held by a securities intermediary "***are not property of the securities intermediary***," and there are numerous ways of stating this point. U.C.C. § 8-503 (emphasis added). One court described it as ownership in a "purely ministerial capacity." *In re AXA Equitable Life Ins. Co. COI Litig.*, 2022 WL 3018104, at *3 (S.D.N.Y. July 29, 2022). Other courts have used the term "nominal owner." *See Sun Life Assurance Co. of Canada v. Bank of Utah*, 2023 WL 7449951, at *7 (N.D. Ga. Nov. 6, 2023); *see also PHT Holding II LLC v. N. Am. Co. for Life & Health Ins.*, 674 F. Supp. 3d 532, 540 (S.D. Iowa 2023) (securities intermediary was "the nominal owner or depository" of life insurance policies). The U.C.C. describes securities

4

intermediaries as performing the "***clerical or ministerial role*** of implementing and recording the securities transactions." U.C.C. § 8-115 cmt. 5 (emphasis added).

The U.C.C. also calls securities intermediaries "the 'conduits' in the indirect holding system," and the term captures well the limited nature of their role. U.C.C. § 8-115 cmt. 1. "Conduit" is also used in the bankruptcy context, where it is used to distinguish those who cannot be held liable under Section 550 of the Bankruptcy Code:

> Generally, ***"mere conduits" hold transferred funds via escrow, trust, or deposit, and do so only in the status of commercial or professional intermediaries for the parties that actually hold or receive a legal right, title, or interest***. ***Examples of them include banks,*** … real estate escrow and title companies, … securities or investment brokers, … and attorneys holding funds in trust in connection with settlements of disputes …

*In re Cir. All., Inc*., 228 B.R. 225, 233 (Bankr. D. Minn. 1998) (emphasis added). The court went on to explain that the rule that "mere conduits" cannot be held liable "is supported by basic fairness as well as public policy considerations," because "***the broadest application of the concept of 'transferee' under [Section 550] would inappropriately subject mere stakeholders, bailees, and intermediaries to liability, where they had never stood to gain personally from the funds momentarily in their possession***." *Id*. (emphasis added); *see also In re USA United Fleet, Inc*., 559 B.R. 41, 64 (Bankr. E.D.N.Y. 2016) ("the entity asserting the defense often is a financial intermediary, such as a financial institution or broker, in the role of facilitating a payment from one entity . . . to another . . ."). This accepted legal principle is the reason that Securities Intermediary can serve as it did here, solely on behalf of an entitlement holder.

The District of Nebraska recently cited the same principle in granting summary judgment to Article 8 intermediaries (the "Broker Defendants") on a conversion claim in *COR Clearing, LLC v. Calissio Res. Grp., Inc*., 2017 WL 5157607 (D. Neb. Nov. 6, 2017). The court dismissed the claim for the simple reason that the money at issue *was not theirs to convert*:

COR has not established the elements of a conversion claim. ***The evidence shows that the brokers did not have possession, dominion, or control over the payments on the due bill credits***. It is undisputed that the DTC assessed and allocated the due bill credits and the brokers immediately credited the payments to their customers or clients, the purchasers of [new Calissio] shares. ***Under the Nebraska U.C.C. property interests in financial assets held by a securities intermediary are held by the securities intermediaries 'for the entitlement holders,' and 'are not property of the securities intermediary.'*** Neb. Rev. Stat. (U.C.C.) § 8-503(a). ***Further, the brokers' possession of the assets was fleeting***. Also, COR has not shown that it had any right to immediate possession of the due bills at issue.

*Id.* at *8 (emphasis added). In affirming the dismissal, the Eighth Circuit quoted the above reasoning of the District Court in its entirety, and said simply: "We agree." *COR Clearing, LLC v. Calissio Res. Grp., Inc.*, 918 F.3d 579, 585 (8th Cir. 2019).[3] The same reasoning applies here: the Benefit Proceeds were not Securities Intermediary's property, and its possession of the Benefit Proceeds was "fleeting."

The District of Minnesota also recently dismissed all claims against the securities intermediary brought by several estates in *Estate of Cappelli v. U.S. Bank Nat'l Ass'n*, 2025 WL 676453 (D. Minn. Mar. 3, 2025); *Estate of Jacobs v. U.S. Bank Nat'l Ass'n*, 2025 WL 676372 (D. Minn. Mar. 3, 2025); *Estate of Hopfinger v. U.S. Bank Nat'l Ass'n*, 2025 WL 676445 (D. Minn. Mar. 3, 2025); *Estate of Breslin v. U.S. Bank Nat'l Ass'n*, 2025 WL 676454 (D. Minn. Mar. 3, 2025). The District of Minnesota court found: "Plaintiff Estate has not alleged any facts that would show that U.S. Bank as Securities Intermediary performed any function beyond a limited, ministerial role. Accordingly, all claims against U.S. Bank are properly dismissed." *Est. of Cappelli*, 2025 WL 676453, at *9; *Est. of Jacobs*, 2025 WL 676372, at *9; *Est. of Hopfinger*, 2025 WL 676445, at *9; *Est. of Breslin*, 2025 WL 676454, at *9. Moreover, the court found "there is

---

[3] *COR Clearing* involved the Nebraska U.C.C., but the relevant provisions are the same in Delaware.

no dispute that U.S. Bank, as the Securities Intermediary, paid the Proceeds to Trust Defendants, the beneficial owners . . . Therefore, U.S. Bank does not have the Proceeds and, therefore, could not be ordered to pay the Proceeds to someone equitably entitled under [Wisconsin's] Section 631.07(4).  *Id.*  Here, Securities Intermediary also does not have the Benefit Proceeds, and cannot be a proper defendant to the Estate's claim.

The Southern District of Florida reached a similar conclusion in the very first case brought by an estate seeking life insurance proceeds under Delaware's Section 2704(b).  In an opinion that echoes the authorities described above, the court held that Wells Fargo "would appear to have no liability" if it "merely passed [the policy proceeds] on in full" to its customer, and is a "payee" only if it "retained any of the proceeds for itself."  *Est. of Malkin v. Wells Fargo Bank, N.A.*, 379 F. Supp. 3d 1263, 1280 (S.D. Fla. 2019).

On appeal, the Eleventh Circuit certified two questions relating to Section 2704(b) to the Supreme Court of Delaware, including whether a "securities intermediary defense" was applicable to such claims.  *See Wells Fargo Bank, N.A. v. Est. of Malkin*, 278 A.3d 53, 67 (Del. 2022) ("*Malkin*").[4]  In answering that question, the Supreme Court of Delaware noted that securities intermediaries are protected by basic legal principles that protect agents and bailees:

> ***As the District Court observed, "[t]o the extent that Wells Fargo, after receiving the Policy proceeds, merely passed them on in full to Berkshire, Wells Fargo would appear to have no liability."*** The comment to Section 8-115 explains that "[t]he policy of this section is similar to that of many other rules of law that protect agents and bailees from liability as innocent converters" and that "***general tort law protects agents or bailees who act on the instructions of their principals or bailors.***"

---

[4] While the Supreme Court of Delaware held in *Malkin* that specific protections under the Delaware U.C.C. did not apply based on the court's interpretation of a particular U.C.C. definition, the Court did *not* hold that Section 2704(b) overrides fundamental blackletter law that an agent is not liable for its principal.

*Id.* (emphasis added).   Accordingly, the Supreme Court of Delaware noted that "a securities intermediary who merely acts on the instructions of the beneficial owner . . . and credits the policy proceeds to the beneficial owner's account is unlikely to face ultimate liability under Section 2704(b)."  *Id.*   The comment to Section 8-115 cited by the Court additionally likens securities intermediaries to the postal service, or shipping companies—in other words, bailees:

> ***The policy of this section is similar to that of many other rules of law that protect agents and bailees from liability as innocent converters.*** If a thief steals property and ships it by mail, express service, or carrier, to another person, the recipient of the property does not obtain good title, even though the recipient may have given value to the thief and had no notice or knowledge that the property was stolen. Accordingly, the true owner can recover the property from the recipient or obtain damages in a conversion or similar action. An action against the postal service, express company, or carrier presents entirely different policy considerations. ***Accordingly, general tort law protects agents or bailees who act on the instructions of their principals or bailors***. See Restatement (Second) of Torts § 235.  See also UCC Section 7-404.

U.C.C. § 8-115, cmt. 2 (emphasis added).   The section of the Restatement (Second) of Torts cited in the above comment states in relevant part that: "A bailee, agent, or servant who redelivers to his bailor, principal, or master is not liable for conversion unless the person entitled to immediate possession has made an adverse claim upon him."  Restatement (Second) of Torts § 235 (1965).

Taken together, these authorities stand for the unremarkable proposition that one cannot be sued for something they never had.  Here, Plaintiff acknowledges the Benefit Proceeds are not owned by Securities Intermediary.  *See, e.g.*, FAC ¶ 57. (alleging Securities Intermediary "transferred" the Benefit Proceeds).  U.C.C. § 8-503 confirms that the Benefit Proceeds, when held by Securities Intermediary, were not Securities Intermediary's property.  Accordingly, Securities Intermediary did not "receive" the "benefits" of the Policy under Delaware's Section 2704(b) or Florida's Section 627.404(4).

**B.     The U.C.C. and General Principles of Tort Law Protect Securities Intermediary, as Agent or Bailee, from the Estate's Claims**

The Estate's claims in this case fail for the reasons articulated in the above authorities: Securities Intermediary was merely the ***nominal owner*** of the Policy. As in the above authorities, Securities Intermediary was a "mere conduit" who "never stood to gain personally" from the Benefit Proceeds, which were only "momentarily" or "fleetingly" in Securities Intermediary's possession. As such, Securities Intermediary was an agent, bailee, or conduit, who had no possession, dominion, or control over the Benefit Proceeds. Thus, Securities Intermediary is not a "payee" subject to liability under Delaware's Section 2704(b). *See COR Clearing*, 2017 WL 5157607, at *18 (Broker Defendants could not be held liable for conversion where they only had "fleeting possession" of financial asset that was "not the property of securities intermediary"); *Sec. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 313 (Bankr. S.D.N.Y. 1999) (distinguishing between an "initial transferee" who "has dominion and control over the *res* of the initial transfer" from a "conduit," who "has but a fleeting possessory interest therein"). These principles are embedded in Delaware's Section 2704(b), which permits suits only against "***beneficiary, assignee or other payee***" who "***receives from the insurer***" any benefits of a policy that allegedly violates Delaware's insurable interest requirement.

C.    **Under U.C.C. Section 8-115, Securities Intermediary Cannot Be Liable for Plaintiff's Adverse Claim to Financial Assets Held on Behalf of Its Customer**

1.    **New York Law Governs the Estate's Claims Against Securities Intermediary**

U.C.C. § 8-110(b) provides that "[t]he local law of the securities intermediary's jurisdiction . . . governs," *inter alia*:

(1) Acquisition of a security entitlement from the securities intermediary;
(2) The rights and duties of the securities intermediary and entitlement holder arising out of a security entitlement;
(3) Whether the securities intermediary owes any duties to an adverse claimant to a security entitlement . . .

The "law of the securities intermediary's jurisdiction" is determined by the rules set forth

in U.C.C. § 8-110(e), which provides the "securities intermediary's jurisdiction" is determined first by reference to the "the agreement between the securities intermediary and its entitlement holder governing the securities account[.]" If the relevant agreement "expressly provides that a particular jurisdiction is the securities intermediary's jurisdiction for purposes of this part . . . that jurisdiction is the securities intermediary's jurisdiction." U.C.C. § 8-110(e)(1). Here, Securities Intermediary's relevant agreement with CSMT III provides that New York is Securities Intermediary's jurisdiction. Thus, under U.C.C. § 8-110's choice of law rules, New York law governs the "rights and duties" of Securities Intermediary, including whether Securities Intermediary "owes any duties to an adverse claimant" to the Benefit Proceeds.

### 2.    The Estate's Claims Are "Adverse Claims" Under Section 8-115

U.C.C. Section 8-115 provides: "A securities intermediary that has transferred a financial asset pursuant to an effective entitlement order . . . is not liable to a person having an adverse claim to the financial asset." Section 8-115 codified the common law principles described in Section V.A. above. *See* U.C.C. § 8-115, cmt. 2.[5] This rule "embodies one of the fundamental principles of the Article 8 indirect holding system rules—that a securities intermediary owes duties only to its own entitlement holders." U.C.C.§ 8-115, cmt. 4.[6]

The Estate's claim to recover the Benefit Proceeds is "an adverse claim to the financial

---

[5] Section 8-115 is also consistent with state banking laws. The New York Banking Law, for example, provides that banks need not recognize any adverse claim to funds or securities on deposit with them unless they have been served with legal process. *See* N.Y. Banking Law § 134 (McKinney).

[6] As Comment 5 to U.C.C. Section 8-115 explains, the "clerical or ministerial role of implementing and recording the securities transactions that [Securities Intermediary's] customers conduct … consists of following the [customer's] instructions," and "[i]t is not the [Securities Intermediary's] role ... to police whether the transactions recorded are appropriate[.]" *See also Pine Belt Enterprises, Inc. v. SC & E Admin. Servs., Inc.*, 2005 WL 2469672, at *7 (D.N.J. Oct. 6, 2005) ("Comment 5 makes clear that Prudential had no duty to inquire into the reasons motivating instructions of an account fiduciary.")

asset [the Policy]." An "adverse claim" is: "a claim that a claimant has a property interest in a financial asset and that it is a violation of the rights of the claimant for another person to hold, transfer, or deal with the financial asset." U.C.C. § 8-102(a)(1). "The determination of whether such a property interest has been created . . . is determined by reference to state law." *Lillard v. Delaware State Hosp. for Chronically Ill*, 552 F. Supp. 711, 724 (D. Del. 1982) (citing *Bishop v. Wood*, 426 U.S. 341, 344 (1976)). "The Supreme Court has held that a state can create a protected 'new property' interest either by statute or implied contract." *Id.* Here, Delaware's Section 2704(b) allows the personal representative of an insured to seek the proceeds of a life insurance policy that allegedly violates Delaware's insurable interest requirement. The Estate's alleged claim to the Benefit Proceeds, created by statute, is a property interest in the Policy that was held by Securities Intermediary.

Securities Intermediary anticipates the Estate will argue that the Delaware Supreme Court previously addressed this issue in holding that U.C.C. Section 8-115 "does not apply" because a Delaware estate claim for recovery of insurance proceeds under 18 Del. C. § 2704(b) "is not an 'adverse claim' under the Delaware UCC." *Malkin*, 278 A.3d at 67. The Delaware Supreme Court reasoned that "[n]obody can have a 'property interest' in a STOLI policy or its proceeds," because, "***such policies are 'nullities'—invalid human-life wagers that never come into legal existence***." *Id.* at 65. But the Court in *Malkin* failed to recognize that Section 2704(b) created a property interest (through a statutory claim) for an estate to recover the proceeds of a life insurance policy that is found to have violated Delaware's insurable interest requirements. Thus, while a policy may be void, Section 2704(b) gives estates a property interest in the policy proceeds. Here, the Estate asserts it has a property interest in the Benefit Proceed by pursuing a Section 2704(b) claim. Therefore, the Estate has brought an "adverse claim" against Securities Intermediary, which

11

Securities Intermediary cannot be liable for.  The Estate's recourse is against the entitlement holder, not Securities Intermediary.

Additionally, in *Malkin*, where the Delaware Supreme Court held Section 2704(b) "is not an 'adverse claim' under the Delaware UCC," *Malkin*, 278 A.3d at 67, the securities intermediary retained the proceeds on deposit during the pendency of the litigation, which is not true here.  *See* Plaintiff's Response in Opposition to Wells Fargo's Motion for Summary Judgment, *Est. of Malkin v. Wells Fargo Bank, N.A., et al.*, No. 17-cv-23136 (S.D. Fla. Sept. 28, 2018), 2018 WL 9908860, at 2.  Here, Securities Intermediary is not in possession of the Benefit Proceeds, which Plaintiff acknowledges.  *See, e.g.*, FAC ¶ 57.  Therefore, *Malkin* does not support the Estate's allegation that Securities Intermediary can be jointly and severally liable for an asset that it does not have and never possessed for its own account.

Securities Intermediary also expects Plaintiff will rely on the *Malkin* Eleventh Circuit finding the securities intermediary jointly and severally liable there following the Delaware Supreme Court's *Malkin* decision, but the Eleventh Circuit's decision resulted from the securities intermediary's unintentional waiver of certain defenses.  *Est. of Malkin by Guarnero v. Wells Fargo Bank, NA*, 2022 WL 2285884, at *2 (11th Cir. June 23, 2022).  Here, Securities Intermediary is expressly preserving its defenses that it cannot be jointly and severally liable because Securities Intermediary did not "receive" the "benefits" from the Policy at issue, and never held a possessory interest in the Policy or its proceeds.

Again, Plaintiff concedes that Securities Intermediary does not have the Benefit Proceeds.  *See, e.g.*, FAC ¶ 57.  Plaintiff therefore cannot recover the Benefit Proceeds from Securities Intermediary.  Delaware's Section 2704(b) and Florida's Section 627.404(4) allow an estate only to make a claim to recover the "benefits" of a policy and does not impose liability on a securities

intermediary, which does not keep those "benefits." In *Malkin*, the Supreme Court of Delaware quoted the Southern District of Florida on this point: "[t]o the extent that Wells Fargo, after receiving the Policy proceeds, merely passed them on in full to Berkshire, Wells Fargo would appear to have no liability." *Est. of Malkin*, 278 A.3d at 67. Plaintiff cannot recover the Benefit Proceeds from Securities Intermediary, thus Securities Intermediary is not the proper defendant to Plaintiff's claim.

Moreover, as explained in Section V.C.1 above, under the choice of law rules codified in Section 8-110 of the U.C.C., New York law governs Securities Intermediary's role as a securities intermediary, including whether they owe "any duties to an adverse claimant to a security entitlement." U.C.C. 8-110(b)(3). New York law differs in a crucial respect from Delaware law. The Court of Appeals of New York has made clear: "The provisions of the Insurance Law do not make life insurance contracts void if the policyholder lacks an insurable interest in the insured's life." *New England Mut. Life Ins. Co. v. Caruso*, 535 N.E.2d 270, 272 (N.Y. 1989); *see also AEI Life LLC v. Lincoln Benefit Life Co.*, 892 F.3d 126, 137-38 (2d Cir. 2018) ("*Caruso* leaves little room for doubt, we think, that under New York law, wagering insurance contracts entered for the benefit of parties that lack an insurable interest are simply voidable, not void *ab initio*[.]"). Accordingly, *Malkin*'s holding on U.C.C. Section 8-115 does not apply, under New York law, to the Estate's claims against Securities Intermediary here.

### 3.    The Exceptions to Section 8-115's Protections Against Adverse Claims Are Inapplicable

There are three narrow exceptions to U.C.C. Section 8-115. Securities Intermediary is protected from adverse claims "unless the securities intermediary . . . or other agent or bailee":

(1) took the action after it had been served with an injunction, restraining order, or other legal process enjoining it from doing so … ; or
(2) acted in collusion with the wrongdoer in violating the rights of the adverse claimant; or
(3) in the case of a security certificate that has been stolen, acted with notice of the adverse

claim.

U.C.C. § 8-115.  The first and third exceptions clearly are inapplicable because (i) Securities Intermediary was not, and the Estate does not contend Securities Intermediary was, served with any legal process enjoining it from transferring the Benefit Proceeds to CSMT III, and (ii) this case does not involve securities certificates.  The second exception, called the "collusion test," also is inapplicable.  The collusion test requires a showing "tantamount to tortious aiding and abetting." *See, e.g.*, *Amegy Bank Nat'l Ass'n v. Deutsche Bank Alex.Brown*, 619 F. App'x 923, 928 (11th Cir. 2015); *see also In re Tuscany Energy, LLC*, 581 B.R. 681, 690 (Bankr. S.D. Fla. 2018) ("As the official comments to those provisions explain, collusion involves being complicit in a wrongdoing, and is explicitly compared to aiding and abetting an intentional tort.").  The Estate would have to prove not only that Securities Intermediary actually ***knew*** that the Policy was allegedly STOLI, illegal, and violated the Estate's rights (which it did not), but also that Securities Intermediary's actions went "beyond the ordinary standards of the business of implementing and recording transactions."  U.C.C. § 8-115, cmt. 5; *Amegy*, 619 F. App'x at 928.

The Estate has not alleged that it is the victim of an intentional tort, much less that Securities Intermediary aided, abetted, or colluded in committing one.  None of these words appear in the FAC, nor do any allegations remotely like them.  Nor does the Estate allege Securities Intermediary's conduct went beyond the ordinary business of a securities intermediary.  The collusion exception is plainly inapplicable and, therefore, none of the exceptions to Section 8-115 apply.  Accordingly, under U.C.C. Section 8-115, Securities Intermediary is not liable for the Estate's claims against it.

### D.    Federal Banking Law Preempts Plaintiff's Claim

Securities Intermediary is a federal savings bank.  *See* FAC ¶ 4.  As a federal savings bank,

Securities Intermediary was chartered under the federal Home Owners' Loan Act ("HOLA").[7] After Congress passed the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank Act"[8]), the Office of the Comptroller of the Currency ("OCC"), which regulates federal savings banks (such as Securities Intermediary) and federally chartered banks, amended its rules pertaining to federal preemption of state laws to implement the Dodd-Frank Act. Specifically, the OCC added 12 C.F.R. § 7.4010(a) to its regulations, which now provides: "Federal savings associations and their subsidiaries shall be subject to the same laws and legal standards, including regulations of the OCC, as are applicable to national banks and their subsidiaries, regarding the preemption of state law." As such, the conformed HOLA is subject to the legal standard for preemption under the U.S. Supreme Court's decision in *Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 33 (1996), which is the same preemption standard for federally chartered banks under the National Bank Act ("NBA"). *See* 12 U.S.C. § 25b(b).

Securities Intermediary exercises the same financial intermediary powers that the NBA confers upon national banks, which includes "the power to exercise 'all such incidental powers as shall be necessary to carry on the business of banking.'" *First Nat'l Bank of E. Arkansas v. Taylor*, 907 F.2d 775, 777 (8th Cir. 1990) (quoting 12 U.S.C. § 24 (Seventh)).

Under *Barnett Bank*, the federal banking law Securities Intermediary is subject to preempts state laws that "significantly interfere" with a national bank's ability to exercise its express and incidental powers. *Barnett Bank*, 517 U.S. at 33. Courts consider "the nature and degree of the state laws' alleged interference with the national banks' exercise of their powers based on the text and structure of the laws, comparison to other precedents, and common sense." *Cantero v. Bank*

---

[7] Home Owners' Loan Act of 1933 (HOLA) §§ 1–14, 12 U.S.C. §§ 1461–1468c (2006).

[8] Pub. L. No. 111-203, 124 Stat. 1376 (2010).

*of Am., N.A.*, 602 U.S. 205, 220 n.3 (2024). "[W]hen state prescriptions significantly impair the exercise of authority . . . the State's regulations must give way." *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 12 (2007).

Securities Intermediary is authorized as national banks are under the NBA "to serve as agents for their customers in the purchase and sale of various financial investment instruments." *NationsBank of N. Carolina, N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 259 (1995) ("'[T]he business of banking' described in § 24 Seventh covers brokerage of financial investment instruments."). For example, the NBA recognizes financial intermediation as part of the business of banking and states: "The business of dealing in securities and stock by the association shall be limited to purchasing and selling such securities and stock without recourse, solely upon the order, and for the account of, customers[.]" 12 U.S.C. § 24 (Seventh).

Delaware's Section 2704(b) and Florida's Section 627.404(4) cannot impose liability on Securities Intermediary for acting as a federally chartered bank is expressly authorized by federal law to act. Plaintiff alleges Securities Intermediary acted on behalf of another party, *see, e.g.*, FAC ¶ 57, which falls within Securities Intermediary's financial intermediary power. Plaintiff's claim under either Section 2704(b) or Section 627.404(4) would impose liability on Securities Intermediary solely for acting as a financial intermediary, which significantly interferes with "following the instructions of the customer" as a securities intermediary is authorized to do, without having "to police whether the transactions recorded are appropriate[.]" U.C.C. § 8-115 cmt. 5. Because Plaintiff's claim significantly interferes with Securities Intermediary's exercise of the well-recognized power to act as a financial intermediary, federal banking law preempts Plaintiff's claim.

1.    __The McCarran-Ferguson Act Does Not Apply__

Securities Intermediary anticipates the Estate will argue the McCarran-Ferguson Act, a federal statute, reverse-preempts federal banking law.  That argument fails.  The McCarran-Ferguson Act "provides that a federal statute will not pre-empt a state statute enacted 'for the purpose of regulating the business of insurance'—unless the federal statute 'specifically relates to the business of insurance.'"  *Barnett Bank*, 517 U.S. at 27-28 (quoting 15 U.S.C. § 1012(b)).  However, "when application of the federal law would not frustrate any declared state policy or interfere with a State's administrative regime, the McCarran-Ferguson Act does not preclude its application."  *Humana Inc. v. Forsyth*, 525 U.S. 299, 310 (1999); *see also United States v. Dep't of Ins.*, 66 F.4th 114, 122 (3d Cir. 2023) ("*DOI*") (McCarran-Ferguson Act only precludes federal law where "applying federal law would invalidate, impair, or supersede the state law.").  Before determining whether the McCarran-Ferguson Act "reverse-preempt[s]" federal law, courts conduct a "threshold inquiry" into whether the challenged conduct constitutes the "business of insurance," which goes to whether the state statute under which the conduct is challenged is in fact regulating insurance.  *DOI*, 66 F.4th at 122-24.  "If the defendant's conduct does not constitute "the business of insurance," then the Act simply does not apply."  *Sabo v. Metro. Life Ins. Co.*, 137 F.3d 185, 190 (3d Cir. 1998).

Here, the challenged conduct underlying the Estate's claims against Securities Intermediary is financial intermediation—the transfer of the Benefit Proceeds to the beneficial owner.  *See DOI*, 66 F.4th at 129-30 (for determining the threshold inquiry, the "challenged conduct" is the specific fact pattern motivating the suit).

The factors informing whether the challenged conduct constitutes the "business of insurance" are "(1) whether the practice has the effect of transferring or spreading a policyholder's

risk; (2) whether the practice is an integral part of the policy relationship between the insurer and the insured; and (3) whether the practice is limited to entities within the insurance industry." *Sabo*, 137 F.3d at 191. The "focus" of the inquiry is whether the conduct goes toward "the relationship between the insurance company and the policyholder." *See SEC v. National Securities, Inc.*, 393 U.S. 453, 460 (1969) ("The relationship between insurer and insured, the type of policy which could be issued, its reliability, interpretation, and enforcement—these were the core of the 'business of insurance.'").

The conduct here bears none of those characteristics. First, the intermediary transfer of funds does not involve any transfer of risk from insured to insurer. Unlike the actual performance of the insurance contract, "[w]ithout [which], there is no risk transfer at all," *U.S. Dep't of Treasury v. Fabe*, 508 U.S. 491, 504 (1993), passing along the Benefit Proceeds does not alter the assignment of risk between the insured and insurer. Indeed, a hallmark of bank intermediation is that the bank does not incur the risk of its customers. *NationsBank*, 513 U.S. at 260 n.4 ("Assuring that the brokerage in question would not deviate from traditional bank practices, the Comptroller specified that NationsBank 'will . . . incur no interest rate or actuarial risks.'").

Second, Securities Intermediary's financial intermediation services are entirely incidental to the relationship between insurer and insured. There is no functional difference between a party paying another by hand-delivering cash and doing so through a banking intermediary. To conclude otherwise would threaten to sweep into the "business of insurance" every bank whose customers pay their premiums with checks, as well as credit card companies and even the U.S. Postal Service. None of these intermediary service providers are "an integral part of the policy relationship" between insurer and insured. *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129 (1982).

Third, such intermediary service providers are clearly outside of the insurance industry.

Multiple courts have held that "banks are not entities within the insurance industry." *See, e.g.*, *United Servs. Auto. Ass'n v. Muir*, 792 F.2d 356, 364 (3d Cir. 1986); *First Nat'l Bank*, 907 F.2d at 779-80. This confirms that when a federally chartered bank like Securities Intermediary engages in the intermediary transfer of a benefit, it does not conduct the "business of insurance."

## VI.     <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the Complaint in its entirety with prejudice as to Securities Intermediary and grant such other and further relief as the Court deems just and proper under the circumstances.

Dated: May 29, 2025     **K&L GATES LLP**

          */s/ Steven L. Caponi*
          Steven L. Caponi (No. 3484)
          Robert K. Beste (No. 3931)
          Matthew B. Goeller (No. 6283)
          Michael J. Vail (No. 6994)
          600 N. King Street, Suite 901
          Wilmington, DE 19801
          Phone: (302) 416-7000
          steven.caponi@klgates.com
          robert.beste@klgates.com
          matthew.goeller@klgates.com
          michael.vail@klgates.com

          *Attorneys for Defendant Wilmington Savings Fund Society, FSB*