## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

THE ESTATE OF EWELL E. LONG,
BY ITS PERSONAL
REPRESENTATIVE, CAROL A.
KEISER-LONG,

                              Plaintiff,

v.

WILMINGTON SAVINGS FUND
SOCIETY, FSB; BROADRIVER III,
LP; AND COOK STREET MASTER
TRUST III,

                              Defendants.

C.A. No. 1:25-cv-00358-MN

## THE ESTATE'S OPPOSITION TO THE MOTION TO DISMISS OF DEFENDANT WILMINGTON SAVINGS FUND SOCIETY, FSB

OF COUNSEL:

Michael J. Miller (*pro hac vice*)
Brian D. Burack (*pro hac vice*)
Kara E. Cheever (*pro hac vice*)
1650 Market Street, Suite 2800
Philadelphia, PA 19103

**COZEN O'CONNOR**
Kaan Ekiner (No. 5607)
Nathan Barillo (No. 5863)
1201 North Market Street, Suite 1001
Wilmington, DE 19801
(302) 295-2046
kekiner@cozen.com
nbarillo@cozen.com

*Attorneys for Plaintiff,*
*the Estate of Ewell E. Long*

Dated: June 26, 2025

## Table of Contents

I.    NATURE AND STAGE OF PROCEEDINGS...............................................5

II.   SUMMARY OF ARGUMENT.........................................................6

III.  STATEMENT OF FACTS..........................................................6

IV.   ARGUMENT....................................................................7

      A.    WSFS Is A Proper Defendant And Its UCC Defense Fails. .................7

          1.    The UCC Does Not Immunize WSFS. .......................................7

          2.    The Delaware Supreme Court Has Already Rejected
              WSFS's Purported UCC § 8-115 Defense................................9

          3.    WSFS's Efforts To Avoid *Malkin* Should Be Rejected. ..........13

      B.    WSFS's Preemption Defense Fails ....................................19

          1.    The McCarran-Ferguson Act Precludes the NBA From
              Preempting Section 2704(b). ...................................20

          2.    WSFS's Preemption Defense Otherwise Fails. ......................23

V.    CONCLUSION..................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABN Amro Mortg. Grp. v. Stephens*,
  939 N.Y.S.2d 70 (N.Y. App. Div. 2012) ........................................................20

*Am. Deposit v. Schacht*,
  84 F.3d 834 (7th Cir. 1996) .................................................................23

*Barnett Bank v. Nelson*,
  517 U.S. 25 (1996) ..........................................................................22

*Cantero v. Bank of America*,
  602 U.S. 205 (2024) ....................................................................25, 26

*Chamber of Commerce v. Whiting*,
  563 U.S. 582 (2011) ........................................................................21

*COR Clearing, LLC v. Calissio Res. Grp., Inc.*,
  2017 WL 5157607 (D. Neb. Nov. 6, 2017) ........................................................18

*U.S. Bank v. Estate of Albart*,
  2023 WL 7491131 (Fla. Cir. Ct. Oct. 23, 2023)..........................................13, 26

*Estate of Diamond v. U.S. Bank*,
  2023 WL 6392688 (Fla. Cir. Ct. Sept. 15, 2023) .......................................13, 26

*Faison v. Lewis*,
  25 N.Y.3d 220 (N.Y. 2015) ..................................................................20

*In re Circuit Alliance, Inc.*,
  228 B.R. 225 (Bankr. D. Minn. 1998) ........................................................18

*Jiles v. Archer*,
  983 N.Y.S.2d 283 (N.Y. App. Div. 2014) ......................................................20

*S.E.C. v. National Securities*,
  393 U.S. 453 (1969) ........................................................................23

*Sabo v. Metropolitan Life Ins.*,
  137 F.3d 185 (3d Cir. 1998) ...........................................................22, 23, 24

*Sec. Inv. Prot. Corp. v. Stratton Oakmont*,
　234 B.R. 293 (Bankr. S.D.N.Y. 1999) ................................................................. 18

*Sun Life v. U.S. Bank*,
　2016 WL 161598 (S.D. Fla. Jan. 14, 2016), *aff'd* 693 F. App'x 838
　(11th Cir. 2017) .................................................................................................... 26

*U.S. Bank v. Sun Life*,
　2016 WL 8116141 (E.D.N.Y. Aug. 30, 2016) ..................................................... 26

*U.S. Dep't of Treasury v. Fabe*,
　508 U.S. 491 (1993) .............................................................................................. 24

*United States v. Department of Insurance*,
　66 F.4th 114 (3d Cir. 2023) .................................................................... 22, 23, 24

*Wells Fargo v. Estate of Malkin*,
　278 A.3d 53 (Del. 2022) ............................................................................. *passim*

**Statutes**

18 Del. C. § 2704(b) ........................................................................................ *passim*

12 U.S.C. § 24 .................................................................................................... 23, 25

15 U.S.C. § 1012(b) .................................................................................................. 22

Fla. Stat. § 627.404(4) ..................................................................................... *passim*

UCC § 8-102 ............................................................................................... 8, 10, 15

UCC § 8-115 ..................................................................................................... *passim*

UCC § 8-503 ............................................................................................................. 8

## I.    NATURE AND STAGE OF PROCEEDINGS

This case involves a stranger-originated life insurance ("STOLI") policy procured on the life of Ewell Long (the "Policy") through a scheme orchestrated by Ocean Gate. After the Policy was issued, it was sold on the secondary market and, ultimately, Defendant Wilmington Savings Fund Society, FSB ("WSFS") became the named owner and beneficiary of the Policy. WSFS acted as a securities intermediary for undisclosed investors/principals, eventually revealed to be Defendants BroadRiver III LP ("BroadRiver") and Cook Street Master Trust III ("CSMT").

After Mr. Long passed away, WSFS as beneficiary of the Policy, and acting for its then-hidden principals, submitted a claim to receive the Policy's death benefit. The insurer paid the death benefit to WSFS, which transferred it to BroadRiver/CMST. The Estate of Ewell Long (the "Estate") brought this action under 18 Del. C. § 2704(b) ("Section 2704(b)"), or alternatively Fla. Stat. § 627.404(4) ("Section 627.404(4)"), to recover the Policy's benefits from Defendants, each of which is jointly and severally liable.

WSFS moved to dismiss, arguing that as a securities intermediary, it is immunized from liability under UCC § 8-115, and that the National Banking Act of 1864 ("NBA") supposedly preempts the Estate's claims. (D.I. 32).

## II.    SUMMARY OF ARGUMENT

WSFS's motion should be denied because (i) WSFS is a proper defendant under the plain language of Section 2704(b) and Section 627.404(4) as the beneficiary, assignee, and/or payee and recipient of the Policy's proceeds; (ii) WSFS's UCC-based arguments were rejected by the Delaware Supreme Court in *Wells Fargo v. Estate of Malkin*, 278 A.3d 53 (Del. 2022) ("*Malkin*"); and (iii) the NBA does not preempt the Estate's claims.

## III.    STATEMENT OF FACTS

The Policy was procured through Ocean Gate's STOLI program in 2007.[1] In 2014, WSFS became the named owner and beneficiary of the Policy. The behind-the-scenes interest in the Policy was ultimately acquired by BroadRiver and CSMT. WSFS was the outward-facing owner and beneficiary when Long passed away on January 13, 2022. WSFS submitted a claim for the Policy's death benefit to the insurer, which paid the proceeds to WSFS via check made payable to WSFS. In secret, WSFS subsequently transferred those proceeds to BroadRiver and/or CSMT. On March 7, 2025, the Estate brought suit against WSFS, BroadRiver, and CMST to recover the STOLI proceeds pursuant to Delaware's common law and Section 2704(b), or, alternatively, under Florida's common law and Section 627.404(4).

---

[1] The Policy's procurement through the Ocean Gate program is more fully described in the Estate's opposition to the motion to dismiss of BroadRiver and CSMT. The Estate focuses here on the facts relevant to WSFS's motion.

## IV.    ARGUMENT

### A.    WSFS Is A Proper Defendant And Its UCC Defense Fails.

Although WSFS tries to conceal its argument with multiple headings and rhetoric spanning many pages (Br. at 3-9), WSFS's actual argument (Br. at 9-14) is that UCC § 8-115 immunizes WSFS because, in WSFS's view, the Estate's claims are "adverse claims" under the UCC. WSFS obscures its argument because the *en banc* unanimous Delaware Supreme Court fully rejected it in *Malkin*, but this Court should not be misled.

#### 1.    The UCC Does Not Immunize WSFS.

WSFS begins by citing UCC §§ 8-102(a)(7), 8-102 (a)(14), and 8-503 to contend that it served only as the "nominal owner" of the Policy in a "purely ministerial capacity," acting merely as a "conduit" in a "clerical" role for its principal(s). Br. at 4-5. But none of these UCC sections afford WSFS a defense. UCC §§ 8-102(a)(7) and (a)(14) merely define the terms "entitlement holder" and "securities intermediary." And UCC § 8-503 simply provides that a securities intermediary's customer's assets are not the securities intermediary's property. These UCC sections say nothing about absolving a securities intermediary from liability, let alone in a *sui generis* STOLI case.

Nor do the UCC's definitions have any bearing on Section 2704(b)'s or Section 627.404(4)'s plain language, which contain no carveouts for "nominal

owners" acting in supposed "ministerial capacities." Indeed, although WSFS argues it is not a proper defendant, its argument defies the plain language of both statutes.

For example, Section 2704(b) provides, in relevant part:

> If the ***beneficiary, assignee or other payee*** under any contract made in violation of this section ***receives from the insurer any benefits*** … the individual insured or his or her executor or administrator, as the case may be, may maintain an action to recover such benefits ***from the person so receiving them***.

18 *Del. C.* § 2704(b) (emphasis added).[2]

WSFS was the owner, beneficiary, assignee, and payee of the Policy's death benefit. Compl. (D.I. 1-1), ¶¶ 37, 40-41. WSFS made the claim for the Policy's death benefit and then received the death benefit via check made payable to WSFS. *Id.* Simply put, WSFS is a proper defendant because it was the "beneficiary, assignee or other payee" under the Policy and "receiv[ed]" the Policy's benefits.

Contrary to WSFS's suggestion (Br. at 3-9), nothing within Section 2704(b) or Section 627.404(4) absolves securities intermediaries, nor do those statutes say anything about "nominal ownership," "ministerial roles," or "conduits," or receiving STOLI proceeds on behalf of someone else, as WSFS suggests. Rather, these statutes identify the "beneficiary, assignee or other payee" of a STOLI policy as proper defendants, and allow estates to "recover such benefits from the person so receiving them." Here, that was WSFS in the first place.

---

[2] Florida's Section 627.404(4) is substantively identical.

### 2. The Delaware Supreme Court Has Already Rejected WSFS's Purported UCC § 8-115 Defense.

WSFS obfuscates its true argument because, at bottom, WSFS is simply arguing that it is immune as a securities intermediary under UCC § 8-115, which (although inapplicable) is the only UCC provision that provides a securities intermediary defense. However, this is the ***exact argument*** that the unanimous *en banc* Delaware Supreme Court rejected in *Malkin*. 278 A.3d at 60, 64-67 (rejecting UCC defenses including because, *inter alia*, "a Section 2704(b) action is not an 'adverse claim' as that term is defined in UCC § 8-102"). Rather amazingly, WSFS asks this Court to ignore *Malkin* because, according to WSFS, the Delaware Supreme Court was wrong and the Estate is asserting an "adverse claim" under the UCC. (Br. at 9-14).

In *Malkin*, Wells Fargo was the owner, beneficiary, and payee of a STOLI policy, and served as securities intermediary for a STOLI investor, Berkshire. 379 F. Supp. 3d 1263, 1267-70 (S.D. Fla. 2019). When the insured died, the insurer "issued a check to Wells Fargo" and "Wells Fargo credited that full amount to the securities account that it maintained on behalf of Berkshire." *Id.* at 1269. Wells Fargo and Berkshire argued that the UCC immunized them both from the estate's Section 2704(b) claim, with Wells Fargo specifically arguing that it was immunized by UCC § 8-115. *Id.* at 1277-80.

The trial court held the policy lacked insurable interest and also concluded "that Berkshire and Wells Fargo's UCC-based defenses fails as a matter of law." *Id.* at 1279-80. Accordingly, the Court entered judgment against Berkshire and Wells Fargo, jointly and severally. 2019 WL 12105729, at *1 (S.D. Fla. Sept. 27, 2019).

Wells Fargo and Berkshire appealed to the Eleventh Circuit, which affirmed that the at-issue policy lacked insurable interest. 998 F.3d 1186, 1193-98 (11th Cir. 2021). The court then certified questions to the Delaware Supreme Court regarding Wells Fargo's and Berkshire's UCC defenses. *Id.* at 1198-99, 1202-03.

On certified questions, Wells Fargo—represented by the same counsel as WSFS here—argued *inter alia*, that as a securities intermediary, Wells Fargo was immune from "adverse claims" because it "served only in [a] limited, ministerial role," *Malkin*, 2021 WL 2895954, at *8 (Del. July 7, 2021) (Opening Br. of Wells Fargo); that, although the death-benefit check was paid to Wells Fargo, it "immediately credited the amount" to Berkshire's account, such that Wells Fargo was not a proper defendant, *id*. at *9–10; and "that, because its role was limited to that of a securities intermediary, UCC § 8-115 'immunizes' it from liability" in connection with its handling of a "financial asset." 278 A.3d at 63.[3]

---

[3] WSFS misstates the facts in *Malkin*, claiming (Br. at 12) that Wells Fargo retained the STOLI proceeds. This is false. Instead, Wells Fargo put the proceeds into an account owned by Berkshire, a fact that WSFS's counsel, representing Wells Fargo there, admitted to the Delaware Supreme Court.

The Delaware Supreme Court rejected these arguments. *Malkin*, 278 A.3d at 64-68. The *Malkin* Court held that UCC § 8-115—which, as noted, is the only provision that allows securities intermediaries to argue that their status immunizes them from liability—does not apply "in the *sui generis* context of a Section 2704(b) action." *Id.* The Court explained that "UCC § 8-115 does not apply to an Estate's claim under Section 2704(b)" because the UCC "only operate[s] against an 'adverse claim.'" *Id.* at 67. An "adverse claim" requires an asserted "property interest"; however, "[n]obody can have a 'property interest' in a STOLI policy or its proceeds [because] such policies are 'nullities'—invalid human life wagers that never come into legal existence." *Id.* at 65. The *Malkin* Court thus concluded that "an action to recover death benefits under Section 2704(b) does not assert an 'adverse claim'" under the UCC. *Id.*

Accordingly, *Malkin* held that the UCC does not provide a defense to Section 2704(b) claims, even if a securities intermediary serves in a "limited, ministerial role." The Court went on to explain, however, "[t]hat does not mean … that a securities intermediary will ultimately be liable to pay an estate under Section 2704(b)." *Id.* at 67. The Court elaborated that an agent/securities intermediary would be "unlikely to face ultimate liability"—i.e., be the party responsible for paying a judgment—because it could seek protection under "general principles of agency law or its contract with its customer, the beneficial owner of the policy." *Id.*

Stated differently, the *Malkin* Court held agents/securities intermediaries are indeed proper defendants under Section 2704(b), but that they can turn to their principals for indemnification and thus avoid ultimate liability. Following *Malkin's* precedent, courts have consistently entered judgment against securities intermediaries alone, or jointly and severally with their principals, rejecting the arguments WSFS is advancing here. *See, e.g.*, *Daher*, 2024 WL 3571642, at *7 (C.D. Cal. July 23, 2024) (granting estate's summary judgment and ordering that "judgment be, and hereby is, entered in favor of Plaintiff Estate of Joseph H. Daher and against Defendant Wells Fargo Bank, N.A."); *Albart*, 2023 WL 7491131, at *17 (Fla. Cir. Ct. Oct. 23, 2023) (granting summary judgment and concluding "[t]he Estate is entitled to recover from U.S. Bank and Viva, jointly and severally"); *Diamond*, 2023 WL 6392688, at *6 (granting summary judgment and directing submission of "a Final Judgment in favor of Plaintiff Estate of Marvin Diamond and against Defendants U.S. Bank National Association and Viva Capital 3, LP"); *Estate of Malkin*, 2019 WL 12105729, at *1 ("[E]nter[ing] final judgment in favor of the Estate, jointly and severally against Defendants [Berkshire and Wells Fargo]").

Although WSFS mentions *Malkin*, it effectively ignores the Delaware Supreme Court's unanimous, *en banc* decision and repackages the same failed arguments Wells Fargo—through the same counsel—made there. These arguments lack any good faith basis in the law or the facts, and should be rejected.

### 3. WSFS's Efforts To Avoid *Malkin* Should Be Rejected.

Despite the *Malkin* Court's holding that a Section 2704(b) action is not an "adverse claim" because "[n]obody can have a 'property interest' in a STOLI policy or its proceeds," WFSF insists that the Delaware Supreme Court got it wrong. (Br. at 11). WSFS argues that "the Court in *Malkin* failed to recognize that Section 2704(b) created a property interest (through a statutory claim) for an estate to recover the proceeds of a life insurance policy that is found to have violated Delaware's insurable interest requirements. Thus, while a policy may be void, Section 2704(b) gives estates a property interest in the policy proceeds." *Id.*

In other words, WSFS suggests that the Estate's legal rights under Section 2704(b) and Section 627.404(4) are themselves property rights such that any lawsuit constitutes an "adverse claim" under the UCC, thus providing WSFS immunity through UCC § 8-115. This argument fails because it was raised and rejected in *Malkin*, and fails to satisfy the plain terms of Article 8.

In *Malkin*, Wells Fargo joined in the arguments made by Berkshire. 2021 WL 2895954 at *1. In turn, Berkshire asserted the same argument WSFS makes here— that the purported "adverse claim" was the Malkin estate's legal rights under Section 2704(b). *See, e.g.*, Ex. 1 at 22 (Berkshire's *Malkin* Opening Brief) ("Here, the Estate claims a superior property interest in the Policy's death benefit because it relies on Section 2704(b), which confers on the Estate a right to file suit to 'recover such

benefits'"); Ex. 2 at 20 (Berkshire's *Malkin* Reply Brief) ("[A]n 'adverse claim' is the property interest asserted by the *claimant*—here, the Estate. And the only property interest that Section 2704(b) permits the Estate to assert is in the Policy's 'benefits.'"). The *Malkin* Court rejected this argument and held that Section 2704(b) claims are not "adverse claims" under the UCC. 278 A.3d at 65 ("Thus, as a textual matter, we do not read the definition of 'adverse claim' in Section 8-102(a)(1) of the UCC to include actions brough under Section 2704(b).")

The Delaware Supreme Court was obviously correct because, as WSFS concedes, Section 8-115 of the UCC provides that "[a] securities intermediary that has transferred a ***financial asset*** pursuant to an effective ***entitlement order*** … is not liable to a person having an ***adverse claim*** to the ***financial asset***." An "adverse claim" is limited to "a claim that a claimant has a ***property interest*** in a ***financial asset*** and that it is a violation of the rights of the claimant for another person to hold, transfer, or deal with the ***financial asset***." And while the definition of "financial asset" can be broad, it cannot be broader than the "***property*** that is held by a securities intermediary for another person in a securities account if the securities intermediary has ***expressly agreed*** with the other person that the ***property is to be treated as a financial asset*** under this Article."

Stated differently, for the Estate's legal rights to constitute "adverse claims," WSFS must establish that those legal rights were "financial assets" that could be

held and transferred via "entitlement order" under Article 8. WSFS, unsurprisingly, doesn't attempt to prove this. Nor does this argument make any sense. First, the Estate's legal rights didn't manifest until January 2022, after WSFS claimed and received the Policy's STOLI proceeds. Second, nothing within Article 8—allowing for the indirect holding of securities—provides that a "financial asset" could include a third-party's legal rights, let alone legal rights that hadn't yet come into existence. Third, WSFS does not claim that CSMT acquired a property interest in the Estate's legal rights, or that WSFS held the Estate's legal rights under Article 8 for CSMT's benefit.

To avoid *Malkin*'s rejection of this argument, WSFS claims it had a "relevant agreement" with CMST and an "entitlement order" (Br. at 10), and that these documents somehow mean that *Malkin* was wrong and the Estate's assertion of its legal rights actually is an "adverse claim."

WSFS did not attach these documents to its motion (and they are outside the pleadings), but the Estate requested them to respond to WSFS's motion. (*See* Exhibits 3-4). These documents confirm WSFS's UCC arguments are misplaced because they say nothing about the Estate's legal rights (or any third-party estate legal rights, for that matter) being treated as "financial assets." The  agreement is a securities account agreement, and its entire purpose was for the "account holder," CSMT, "to acquire, hold and transfer or convey certain life insurance policies (the

'Policies')"; and CMST engaged WSFS to establish a "securities account" and "hold the Policies in such securities account." Ex. 3 (SACA, Whereas Clause). The agreement expressly defined the "financial assets" as life insurance policies and their proceeds—with no reference whatsoever to the Estate's legal rights to maintain an action under Section 2704(b) or Section 627.404(4). *Id.* § 2.1 (defining financial assets); § 3.1 (financial asset election for "any Policies, funds, investments, and proceeds thereof").

Thus, WSFS's contract with CMST puts to lie any argument that WSFS somehow held the Estate's legal rights as "financial assets" under the UCC, or that this lawsuit could now be deemed an "adverse claim." Because the purported "financial asset" that WSFS held was the Policy and its proceeds, *Malkin* is squarely on point. And because no one can have a property interest in a STOLI policy or its proceeds, there is no "adverse claim." 278 A.3d at 64-67.

To further avoid *Malkin*, WSFS cites (Br. at 5-6) various non-Delaware (and non-Florida) cases to inject "dominion and control" and "possession" modifiers into the statutory plain language. But these cases have nothing to do with Section 2704(b) or life insurance. For example, *COR Clearing, LLC v. Calissio Res. Grp., Inc.*, 2017 WL 5157607 (D. Neb. Nov. 6, 2017), dealt with a conversion claim, which is the "wrongful act of dominion" over another's personal property. *Id*. at *7. That "dominion" is an element of a conversion claim has no bearing on the statutory

16

language here, which says nothing about "dominion" and simply states that whoever "receives" a STOLI policy's death benefit is subject to liability. 18 Del. C. § 2704(b); Fla. Stat. § 627.404(4). Similarly, in *In re Circuit Alliance, Inc.*, 228 B.R. 225, 232 (Bankr. D. Minn. 1998) and *Sec. Inv. Prot. Corp. v. Stratton Oakmont*, 234 B.R. 293, 313 (Bankr. S.D.N.Y. 1999), the bankruptcy courts held that a "mere conduit" could not satisfy the "dominion and control test" for purposes of "transferee" liability under the Bankruptcy Code. But dominion and control under the Bankruptcy Code has nothing to do with claims for recovery of STOLI death benefits.

WSFS also relies (Br. at 6) on the District of Minnesota's decision in four related cases,[4] *Cappelli*, *Jacobs*, *Hopfinger*, and *Breslin*, but they have no bearing here. Those cases involve claims under Wisconsin law, and the court dismissed the securities-intermediary defendant under Wisconsin law because, unlike Delaware and Florida law, Wisconsin's statute provides that STOLI policies *are not* void and thus concluded the estates were making "adverse claims" to property under Wisconsin law. These decisions are irrelevant when policies *are* void, as STOLI policies are in Delaware (and Florida).

---

[4] The court in Minnesota issued a memorandum in each case resolving the omnibus motions. *Estate of Cappelli v. U.S. Bank*, 2025 WL 676453 (D. Minn. Mar. 3, 2025); *Estate of Jacobs v. U.S. Bank*, 2025 WL 676372; *Estate of Hopfinger v. U.S. Bank*, 2025 WL 676445; *Estate of Breslin v. U.S. Bank*, 2025 WL 676454.

In a last-ditch effort to avoid *Malkin*, WSFS argues that this Court should apply New York's UCC. WSFS seems to suggest that its private contract with CMST—entered into in 2018, over a decade after the Policy's procurement in 2007—called for the application of New York's UCC, and this somehow means that New York law applies to the Policy and governs the Estate's claim. This is patently absurd.

First, whether the Policy had insurable interest is a question of Delaware law (or, alternatively, Florida law). As alleged, the Policy was STOLI under Delaware law and, per *Malkin*, no one ever had a property interest in the Policy or its proceeds. 28 A.3d at 65.

Second, even if this Court were to apply New York's UCC, the outcome is the same because Delaware and New York adopted the same version of Article 8. All of the definitions are the same, and it would be equally true that the Estate's claims are not adverse claims under New York's UCC because the Policy is void *ab initio*. To be sure, New York, like Delaware, holds that there cannot be a property interest in void *ab initio* instruments. *See Faison v. Lewis*, 25 N.Y.3d 220, 225 (N.Y. 2015) (finding that a deed that is void ab initio is "a document without legal capacity to have any effect on ownership rights"); *Jiles v. Archer*, 983 N.Y.S.2d 283, 285 (N.Y. App. Div. 2014) ("If a document purportedly conveying a property interest is void, it conveys nothing…."); *ABN Amro Mortg. Grp. v. Stephens*, 939 N.Y.S.2d 70

(N.Y. App. Div. 2012) (holding that where power of attorney is void ab initio, any document executed by the purported attorney-in-fact is void).

Therefore, because nobody can have a property interest in a legal nullity—like the Policy—the Estate is not asserting an "adverse claim" within the meaning of Section 8-115 of the UCC, whether under New York or Delaware law. And just as *Malkin* held that there was no basis to conclude that Delaware's General Assembly intended to enact Article 8 of the UCC "to violate the Delaware Constitution's general prohibition of wagering or alter the State's longstanding prohibition of STOLI policies," so too is there no basis to conclude that New York's legislature intended to allow entities like WSFS to use New York's UCC to violate Delaware law.

* * *

In sum, the UCC does not immunize WSFS from Estate's claims. Because the UCC provides no defense, the Estate does not address WSFS's arguments about the "collusion" exception to UCC § 8-115. If, however, this Court were to find that WSFS can assert a UCC defense, discovery is necessary to determine whether WSFS "acted in collusion," and its motion must be denied for that reason as well.

## B.    WSFS's Preemption Defense Fails.

WSFS argues (Br. at 14-19), that the Estate's claim under Section 2704(b) (or alternatively Section 627.404(4)) is preempted by the Home Owners' Loan Act of

19

1933 and the National Banking Act of 1864 ("NBA"). The Court should reject this argument.

The Supreme Court has emphasized "a high threshold must be met if a state law is to be preempted for conflicting with the purposes of a federal Act." *Chamber of Commerce v. Whiting*, 563 U.S. 582, 607 (2011). Despite this high threshold, WSFS argues that the NBA preempts the Estate's claim because Section 2704(b) allegedly "significantly interferes" with WSFS's ability to serve as securities intermediary for life insurance policies. (Br. at 15-16). Although the NBA (and HOLA) say nothing about banks serving as SI for life insurance policies, WSFS implores this Court hold, *at the Rule 12 stage*, that Section 2704(b) "significantly interferes" with WSFS's ability to do so. For the following reasons, the NBA does not preempt Section 2704(b).

### 1. The McCarran-Ferguson Act Precludes the NBA From Preempting Section 2704(b).

Under the McCarran-Ferguson Act ("McCarran-Ferguson"), "a federal statute will not pre-empt a state statute enacted 'for the purpose of regulating the business of insurance'—unless the federal statute 'specifically relates to the business of insurance.'" *Barnett Bank v. Nelson*, 517 U.S. 25, 27-28 (1996) (quoting 15 U.S.C. § 1012(b)); *Sabo v. Metropolitan Life Ins.*, 137 F.3d 185, 188 (3d Cir. 1998) (discussing McCarran-Ferguson's express purpose to leave regulation "of the insurance business to the states").

The "threshold question" under McCarran-Ferguson is whether the conduct broadly constitutes the "business of insurance." *United States v. Department of Insurance*, 66 F.4th 114, 122 (3d Cir. 2023) ("*DOI*"). If so, McCarran-Ferguson protects the state law from preemption if: "(1) the federal law at issue does not specifically relate to the business of insurance; (2) the state law regulating the activity was enacted for the purpose of regulating the business of insurance; and (3) applying federal law would invalidate, impair, or supersede the state law." *Id.* Each of these requirements is satisfied here; therefore, the NBA does not preempt Section 2704(b).

First, the threshold question is satisfied because the "challenged conduct broadly constitutes the 'business of insurance.'" *DOI*, 66 F.4th at 122. The "business of insurance" is broadly defined, its "core" being "[t]he relationship between insurer and insured, the type of policy which could be issued, its reliability, interpretation, and enforcement." *S.E.C. v. National Securities*, 393 U.S. 453, 460 (1969). The Policy is a life insurance contract, WSFS owned the Policy for over a decade, submitted a death claim for the Policy, and received the Policy's death benefit from the insurer. These activities go to the core relationship between the insurer and the policyholder (WSFS) and the proceeds paid under the insurance contract, which is the essence of the "business of insurance." *See Sabo*, 137 F.3d at 191-92 (concluding activity constitutes the business of insurance where "[t]he challenged conduct appearing in plaintiff's complaint unquestionably centers around the insurance contract").

Second, WSFS does not dispute that the NBA "does not specifically relate to the business of insurance." *DOI*, 66 F.4th at 122. Nor could it. *See Am. Deposit v. Schacht*, 84 F.3d 834, 843 (7th Cir. 1996) (holding that Section 24 (Seventh) does "not specifically relate to the business of insurance").

Third, Section 2704(b) was specifically "enacted for the purpose of regulating the business of insurance." *DOI*, 66 F.4th at 122. Section 2704(b)—in "Chapter 27. The Insurance Contract" within Delaware's Insurance Code—plainly regulates the business of insurance. *Sabo*, 137 F.3d at 191 (noting that "the core of the insurance business 'centers around the contract of insurance.'"). Section 2704(b) deters illegal insurance contracts and redresses the violation of Delaware's Constitution and public policy that occurs whenever an investor receives the proceeds under such an illegal insurance contract. *Malkin*, 278 A.3d at 65. Such objectives plainly go to the "business of insurance" because they go to "the relationship between the insurance company and the policyholder, … the type of policy which could be issued" and its "enforcement," and "the actual performance of an insurance contract." *U.S. Dep't of Treasury v. Fabe*, 508 U.S. 491, 503 (1993); *DOI*, 66 F.4th at 124.

Finally, WSFS does not dispute that applying the NBA here "would invalidate, impair, or supersede the state law." *DOI*, 66 F.4th at 122.

Accordingly, McCarran-Ferguson defeats WSFS's argument that the NBA preempts Section 2704(b).

### 2. WSFS's Preemption Defense Otherwise Fails.

Even if McCarran-Ferguson did not apply, WSFS's preemption argument should still be rejected. A state law affecting a national bank is preempted only if it "significantly interfere[s] with the national bank's ability to exercise a power … authorized by federal law." *Cantero v. Bank of America*, 602 U.S. 205, 214 (2024). This "significant interference" test is simply not met.

First, acting as SI under the UCC with respect to life insurance policies is not a power conferred by the NBA. The NBA, signed by President Lincoln in the 1860s, conferred on national banks "all such incidental powers as shall be necessary to carry on the business of banking." 12 U.S.C. § 24 (Seventh). The NBA did not confer the power to serve as SI under the UCC for life insurance policies (and certainly does not authorize banks to violate insurable interest laws). Serving as SI with respect to life insurance policies under the UCC does not constitute the "business of banking" as used in the NBA. Accordingly, the NBA has no preemptive effect on Section 2704(b).

Indeed, far from being grounded in the NBA, the concept of a "securities intermediary" is a creature of the UCC's 1994 revisions. These relatively recent innovations confirm that when Congress spoke of the "business of banking" in the 1860s, it could not possibly have been referring to the yet-to-be-invented concept of serving as an SI for life insurance policies. Moreover, the UCC empowers *any* person

or entity—not just banks—to serve as SI. 6 Del. C. § 8-102(a)(14) cmt. 14 (explaining that "a person need not be [a bank] in order to be a securities intermediary"). Because anyone can be an SI, and it is not a power conferred by the NBA (but, instead, the UCC), the NBA has no applicability here.

Second, even if this were an NBA-conferred power, there is nothing to suggest Section 2704(b) poses any "interference," much less "significant interference," other than WSFS's conclusory arguments. To assess "significant interference," courts "must make a practical assessment of the nature and degree of the [alleged] interference," and be guided by "common sense." *Cantero*, 602 U.S. at 219-220.

Here, WSFS baldly claims that if it were held liable under Section 2704(b), there would be "significant interference" with its business. (Br. at 16). WSFS offers no evidence in support (nor could it at this early stage). What's more, WSFS appears to have no interference.[5] To be sure, WSFS (and other securities intermediaries) are fully indemnified by their clients—including for any liability under Section 2704(b). As the *Malkin* court noted, "private ordering in this area is feasible"—i.e., these

---

[5] Banks have litigated STOLI issues for over a decade, and have only recently made this novel NBA preemption argument. *See, e.g.*, *Sun Life v. U.S. Bank*, 2016 WL 161598 (S.D. Fla. Jan. 14, 2016), *aff'd* 693 F. App'x 838 (11th Cir. 2017) (never raising NBA preemption); *U.S. Bank v. Sun Life*, 2016 WL 8116141 (E.D.N.Y. Aug. 30, 2016), *adopted* 2017 WL 347449 (E.D.N.Y. Jan. 24, 2017) (same); *Sol*, 369 F. Supp. 3d 601 (same); *Estate of Diamond v. U.S. Bank*, 2023 WL 6392688 (Fla. Cir. Ct. Sept. 15, 2023) (same); *Estate of Albart*, 2023 WL 7491131 (Fla. Cir. Ct. Oct. 23, 2023) (same); *Sloat*, 2023 WL 9419169 (same).

exact "broad exculpation and indemnification rights … related to its conduct as securities intermediary." 278 A.3d at 67. Section 2704(b) does not "significantly interfere" with WSFS's ability to serve as SI, even if it were an NBA-conferred power. Accordingly, WSFS's NBA preemption argument fails.

## V.    CONCLUSION

For the foregoing reasons, the Estate respectfully requests that the Court deny WSFS's Motion to Dismiss.


                                                **COZEN O'CONNOR**

Dated:  June 26, 2025                           */s/  Nathan Barillo*
                                                Kaan Ekiner (No. 5607)
                                                Nathan Barillo (No. 5863)
                                                1201 North Market Street, Suite 1001
                                                Wilmington, DE 19801
                                                (302) 295-2046/2048
                                                kekiner@cozen.com
                                                nbarillo@cozen.com

                                                -and-

                                                Michael J. Miller (*pro hac vice*)
                                                Brian D. Burack (*pro hac vice*)
                                                Kara E. Cheever (*pro hac vice*)
                                                1650 Market Street, Suite 2800
                                                Philadelphia, PA 19103

                                                *Attorneys for Plaintiff,*
                                                *the Estate of Ewell E. Long.*