## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

THE ESTATE OF EWELL E. LONG,
BY ITS PERSONAL
REPRESENTATIVE, CAROL A.
KEISER-LONG,

Plaintiff,

v.

WILMINGTON SAVINGS FUND
SOCIETY, FSB; BROADRIVER III,
LP; AND COOK STREET MASTER
TRUST III,

Defendants.

C.A. No. 1:25-cv-00358-MN

---

## THE ESTATE'S OPPOSITION TO DEFENDANTS
## BROADRIVER III, LP'S AND COOK STREET MASTER TRUST III'S
## MOTION TO DISMISS THE FIRST AMENDED COMPLAINT OR,
## <u>IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT</u>

OF COUNSEL:

Michael J. Miller (*pro hac vice*)
Brian D. Burack (*pro hac vice*)
Kara E. Cheever (*pro hac vice*)
1650 Market Street, Suite 2800
Philadelphia, PA 19103

**COZEN O'CONNOR**
Kaan Ekiner (No. 5607)
Nathan Barillo (No. 5863)
1201 North Market Street, Suite 1001
Wilmington, DE 19801
(302) 295-2046
kekiner@cozen.com
nbarillo@cozen.com

*Attorneys for Plaintiff,*
*the Estate of Ewell E. Long*

Dated: June 26, 2025

## <u>TABLE OF CONTENTS</u>

I.  NATURE AND STAGE OF PROCEEDINGS.................................................1

II.  SUMMARY OF ARGUMENT.........................................................1

III.  STATEMENT OF FACTS................................................................3

IV.  ARGUMENT.............................................................................3

    A.  The Estate's Delaware Claim Is Viable. ..............................................3

    B.  Delaware Law Governs Because The STOLI Transaction Targeted Delaware. ..............................................4

    C.  The Estate Alleges A Viable Alternative Claim Under Florida Law. ..............................................15

    D.  Defendants' Capacity Argument Is Meritless. ...................................19

    E.  A More Definite Statement Is Not Needed. ......................................21

V.  CONCLUSION.........................................................................21

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AEI Life v. Lincoln*,
892 F.3d 126 (2d Cir. 2018) ........................................................................11, 12

*Arçelik v. E.I. du Pont*,
2018 WL 1401327 (D. Del. Mar. 20, 2018) ....................................................3, 4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...............................................................................................1

*Atkinson v. Wal-Mart Stores*,
2009 WL 1458020 (M.D. Fla. May 26, 2009) ....................................................15

*Brighthouse Life v. Geronta Funding*,
2019 WL 8198323 (Del. Super. 2019) ("*Seck*") ...........................................11, 12

*Fidelity Ins. v. Niven*,
10 Del. 416 (Del. 1878) .......................................................................................20

*Frank v. Wells Fargo*,
620 F. Supp. 3d 1024 (C.D. Cal. 2022) ..............................................................20

*Geronta Funding v. Brighthouse Life*,
284 A.3d 47 (Del. 2022) ......................................................................................12

*Gonzales v. City of Belle*,
287 So. 2d 669 (Fla. 1973) ..................................................................................17

*Knott v. State*,
186 So. 788 (Fla. 1939) .......................................................................................16

*Lavastone v. Estate of Berland*,
266 A.3d 964 (Del. 2021) ....................................................................................19

*Lieberman v. Cambridge*,
432 F.3d 482 (3d Cir. 2005) ................................................................................15

*Life Ins. v. Lopez*,
    443 So. 2d 947 (Fla. 1983) ...................................................................16

*Lifepark v. Sun Life*,
    2023 WL 4108692 (Mass. Super. June 6, 2023) ................................14

*Lincoln v. Retirement Value*,
    2022 WL 17554986 (D. N.J. Dec. 9, 2022)........................................14

*Love v. State*,
    286 So.3d 177 (Fla. 2019) ...........................................................15, 19

*Meerdink v. Am. Ins.*,
    188 So. 764 (Fla. 1939) .......................................................................16

*N.Y. Tr. Co. v. Riley*,
    16 A.2d 772 (Del. 1940) ......................................................................20

*PHL v. Price Dawe*,
    28 A.3d 1059 (Del. 2011) ........................................................9, 10, 17

*Schaedler v. Reading Eagle*,
    370 F.2d 795 (3d Cir. 1967) ................................................................21

*Schneberger v. Wheeler*,
    859 F.2d 1477 (11th Cir. 1988) ..........................................................16

*Sun Life v. U.S. Bank*,
    2016 WL 161598 (S.D. Fla. 2016), *aff'd* 693 F. Appx. 838 (11th
    Cir. 2017) ("*Malkin*") .........................................................................12

*Sun Life v. Wells Fargo*,
    2016 WL 5746352 (D. N.J. Sept. 30, 2016), *aff'd*, 779 F. Appx.
    927 (3d Cir. 2019)................................................................................14

*U.S. Bank v. Sun Life*,
    2016 WL 8116141 (E.D.N.Y. Aug. 30, 2016) ...................................14

*Wells Fargo v. Estate of Malkin*,
    278 A.3d 53 (Del. 2022) ......................................................................19

*Wells Fargo v. Pruco*,
    200 So. 3d 1202 (Fla. 2016) ...............................................................18

*Wilmington Trust v. Lincoln Benefit*,
    2018 WL 6308687 (S.D. Fla. 2018) ...................................................................12

*Wilmington Trust v. Sun Life*,
    294 A.3d 1062 (Del. 2023) .................................................................................13

**Statutes**

12 Del. C. §§ 1565-66 ...............................................................................................20

18 Del. C. § 2704 ............................................................................................*passim*

Fla. Stat. § 627.404 .......................................................................................*passim*

Fla. Stat. § 849.08 ...................................................................................................16

**Other Authorities**

Fed. R. Civ. P. 12 .............................................................................................1, 21

Fed. R. Civ. P. 17 ..................................................................................................21

## I.      NATURE AND STAGE OF PROCEEDINGS

This case involves a $10 million stranger-originated life insurance ("STOLI") policy taken out on Ewell Long's life (the "Policy"). The Estate seeks to recover the death benefit under Delaware or, in the alternative, Florida law. The Policy is governed by Delaware law because the transaction was intentionally structured to target Delaware for a human life wager. But even if Florida law applies, the outcome remains the same: The Policy lacked a valid insurable interest at inception under both states' laws, and the Estate is entitled to recover the death benefit.

Defendants' motion to dismiss ignores the proper standard under Rule 12(b)(6) and improperly relies on their own disputed and self-serving version of the facts. Rather than accepting the well-pleaded allegations of the Complaint, Defendants present a counter-narrative that is neither supported nor appropriate at this stage. In sum, Defendants effectively seek summary judgment under the guise of a Rule 12(b)(6) motion. When the correct standard is applied, Defendants' motion fails. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II.      SUMMARY OF ARGUMENT

1.      The Estate pled a claim under Delaware law. Defendants improperly ask the Court to prematurely resolve a fact-intensive choice-of-law issue on the pleadings. If the Court does so now, Delaware law governs because Delaware has the most significant relationship. From inception, the STOLI scheme targeted

1

Delaware: The Policy was intended to be governed by Delaware law and owned by a Delaware trust administered by a Delaware trustee from Delaware. Defendants' argument that Delaware law cannot apply because the Policy was not delivered or issued for delivery in Delaware is wrong as a matter of fact and law.

2.     Even if Florida law governs, the Estate states a viable claim. Defendants contend the Estate lacks standing to challenge the Policy under Florida law because Florida's recovery statute was enacted in 2008. But the Estate's claim accrued after the statute was enacted—when Defendants received the Policy's benefits in 2022—thus application is not retroactive here. Moreover, the claim is grounded in common law, and the statute was designed to clarify existing law, making it a remedial statute that applies both prospectively and retrospectively.

3.     Defendants wrongly claim that only Delaware-appointed estates can bring 18 Del. C. § 2704(b) claims and only if the death benefit is located in Delaware. The Delaware Supreme Court has clearly held that any estate has standing under the statute, regardless of where it was appointed or where the money is. The Estate is validly appointed in Florida and is obtaining ancillary authority in Delaware, making Defendants' argument meritless and moot.

4.     Defendants' request for a more definite statement fails. The Complaint is more than sufficient to give Defendants fair notice of the claims.

## III.    STATEMENT OF FACTS

Ocean Gate manufactured the Policy for itself through a STOLI scheme by funding a Trust bearing Long's name with the money needed to pay the premium to effect the Policy after Ocean Gate obtained the contractual right to the Trust's beneficial interest, and thus to the Policy's death benefit. Thus, at the moment of inception, investors, not family, were the Policy's ultimate beneficiary. To trick the insurer, the Policy was dressed up to look legitimate, including by making the Trust appear as though it was sited in Long's home state of Florida. But behind the scenes, and before the Policy was effected, the parties had already agreed the Trust would be changed to a Delaware Trust administered by a Delaware trustee from Delaware, meaning Ocean Gate intended that the Trust and the Policy be governed by Delaware law. FAC ¶¶ 29-54.

## IV.    ARGUMENT

### A.    The Estate's Delaware Claim Is Viable.

Defendants ask this Court to engage in a choice-of-law analysis on the pleadings before discovery has been taken, and in the absence of a full and fair factual record. The Court should not accept this premature invitation to decide an inherently fact-intensive question without a record and should reserve judgement on choice-of-law until summary judgment. *Arçelik v. E.I. du Pont*, 2018 WL 1401327, at *9 (D. Del. Mar. 20, 2018). Regardless, the Complaint alleges facts sufficient to state a plausible claim under Delaware law.

3

**B.    Delaware Law Governs Because The STOLI Transaction Targeted Delaware.**

Ocean Gate paid for and acquired STOLI policies on seniors across the country. FAC ¶¶ 29-32. Ocean Gate wanted the policies it manufactured to be governed by Delaware law and held by Delaware trusts administered by Delaware trustees in Delaware. *Id.* Ocean Gate told investors its "Investment Objective And Strategy" was to acquire beneficial interests in Delaware trusts holding policies administered by Delaware trustees, and that "all of the Policies will be governed by Delaware law." Ex. 1 at H-AMT048046-47; *see also* Ex. 2 at H-AMT048014 ("Policies will be acquired in a proprietary Delaware trust structure."); *id.* at H-AMT048015 ("A Common Law trust under the laws of the State of Delaware…applies for and holds the policy.").

Because this violated insurable interest principles, Ocean Gate camouflaged its actions: It would cause the creation of trusts bearing the seniors' names to apply for policies. FAC ¶¶ 30-32. This gave the appearance (to insurers) that insureds were paying for legitimate policies that would benefit their estates by minimizing estate taxes. *Id.* But it was concealed from insurers that Ocean Gate was funding the premium to incept and maintain the policies, and that before the trusts used those funds to pay the initial premium to effect those policies, the trusts' beneficial interests, and thus the rights to receive the policies' death benefits, had already been sold to Ocean Gate. *Id.*

4

Ocean Gate also made the transactions appear normal by having policies applied for by trusts giving the appearance of being sited in the insureds' home states and administered by home-state trustees when, in reality, the agreements establishing those trusts were carefully drafted to make the trusts' situses and governing law flexible and impermanent so Ocean Gate—behind the scenes through separate agreements executed before the policies were effected—could establish that the trusts would actually be located in Delaware, governed by Delaware law, and administered by Delaware trustees. *Id*. ¶¶ 33-53.

Structuring the transaction this way allowed Ocean Gate to target Delaware while making the policies look legitimate. Indeed, Ocean Gate procured over 300 policies and used this ruse to secretly target Delaware on most of them. *See* Ex. 3 (memo to Ocean Gate's subsequent manager) at H-AMT234143 (discussing systematic use of 'flexible and impermanent nature' of trust situs provision to have trusts "deemed to be in the State of Delaware"); *id*. at H-AMT234147 n.6 (insurers alerted years later when Christiana Bank became trustee).

Because discovery has not occurred, the Estate lacks the documentation showing the full details of the Long transaction. But the available evidence shows the same Delaware-based transaction here:

The Trust Agreement, dated March 5, 2007, provided the Trust and Policy were governed by the "laws of the state of trust administration" ("Trust Situs

Provision"), without identifying or defining the "state of trust administration." FAC Ex. A ¶ 15.

On April 23, 2007, before the initial premium was paid to effect the Policy, the Longs (as insured and "Initial Beneficiary"), Wilcox (as "Initial Trustee"), Delaware-lawyer Brian Sullivan (as "Successor Trustee"), and Ocean Gate (as "Successor Beneficiary") executed a Successor Trustee Agreement that modified the "Trust Situs Provision" (*i.e.,* the "state of administration") in the Trust Agreement. FAC Ex. B ¶ 2. The Successor Trustee Agreement states that: "the Trust Administration Situs shall be deemed to be located solely in the State of Delaware as of the date set forth in this Agreement [i.e., April 23, 2007] in accordance with the provisions herein." *Id.* ¶¶ 2-3. Thus, on the face of the Successor Trustee Agreement, as of April 23, 2007, the Trust was sited in Delaware and governed by Delaware law—before the premiums needed to effect the Policy were paid on May 3, 2007. FAC ¶¶ 49, 51.

Separately, the Successor Trustee Agreement describes a "Superseding Delaware Trust Situs Date," when "the situs and/or domicile of this Trust shall be deemed…to be have migrated solely to, and shall be located solely in, the State of Delaware [with] a sole Delaware Trust Administration Situs." FAC Ex. B ¶ 8. This happens when the Longs sell the beneficial interest in the Trust (and thus the Policy) to Ocean Gate, Ocean Gate wires the "First Year Premium" to the Trust, the Trust

uses Ocean Gate's funds to pay the insurer, and Ocean Gate pays the "Consideration" to the Longs. *Id.* ¶¶ 6, 7(b), 8. The Estate alleges this process was complete by May 3, 2007, the date the first year's premium was paid, and before delivery, which the Estate alleges occurred thereafter. FAC ¶¶ 49-50, 52.

Thus, whether the Trust was "deemed" to be in Delaware as of the effective date of the Successor Trustee Agreement (April 23, 2007), or to have "migrated" to Delaware pursuant to ¶ 8 of the Successor Trustee Agreement by no later than May 3, 2007, when Ocean Gate paid the initial premium, the Trust's "situs" was in Delaware when the Policy was delivered to the Trust. FAC ¶¶ 52-53. Likewise, by no later than May 3, 2007, Sullivan, a Delaware lawyer, became Successor Trustee, administering the Trust in Delaware; Wilcox became "Nominal Trustee" with no actual authority. FAC Ex. B ¶¶ 8-10. Moreover, the Successor Trustee Agreement provided that "the laws of the State of Delaware, without regard to conflicts of law principles, shall govern this Agreement" and supersede the initial Trust Agreement—which was the document used to create the ruse that the Trust was ever sited in Florida. *Id.* ¶¶ 12-13. And the Delaware trust administration expressly meant, under the terms of the Trust Agreement, that the Trust *and the Policy* were to be governed by Delaware law. FAC Ex. A ¶ 15 ("laws of state of trust administration…shall govern the validity…of this Trust together with…the Policy").

In sum, the STOLI transaction targeted Delaware. The Policy was always intended to be owned by a Delaware trust with a Delaware trustee and be governed by Delaware law—and this is precisely what happened. The notion that the Trust was a Florida trust was a ruse, and there is no basis to conclude, under the Complaint's well-pled facts, that the Trust was ever actually domiciled in Florida. Regardless, the indisputable facts prove the Trust was sited solely in and under Delaware law at all relevant times, including before the Policy went into effect. So Delaware law governs.

### 1.    Defendants' Arguments Are Wrong On The Facts And Law.

Defendants argue that because the Trust was fleetingly dressed up as a Florida trust with a Florida trustee, before being converted into a Delaware trust with a Delaware trustee as intended from the beginning, the Policy could not have been "delivered" or "issued for delivery" in Delaware within the meaning of § 2701, so somehow Delaware law cannot govern, even though the human life wagering transaction deliberately targeted Delaware. Not so.

*First*, the Estate alleges facts sufficient to establish that the Policy was either issued for delivery or actually delivered in Delaware within the meaning of § 2701. The Estate has not yet uncovered all the details, but based on those it has uncovered, by the time the initial premium was paid to effect the Policy, and before the Policy was issued for delivery and/or actually delivered to the Trust, the Trust's situs had

8

been changed to Delaware, the Trust's administration state had been changed to Delaware, the various agreements' governing law provisions directed Delaware law to govern both the Trust and the Policy, and/or the trustee had been changed to a Delaware lawyer. Assuming those facts are true, the Policy was indisputably delivered or issued for delivery in Delaware. And even if discovery reveals that certain of those Delaware changes did not happen until slightly later, all were clearly agreed upon and intended to happen from the beginning. The Estate has therefore plausibly alleged the Policy was delivered and/or issued for delivery in Delaware.

*Second*, as discussed, even assuming *arguendo* that the Policy was not technically delivered or issued for delivery in Delaware within the meaning of § 2701, Delaware law still governs because the transaction deliberately targeted Delaware to wager on human life in violation of Delaware's Constitution and public policy. The only reason this transaction has a fleeting Florida connection is because it was dressed up to look like a transaction connected to Long's home state.

STOLI promoters cannot avoid the application of Delaware law to Delaware-targeted STOLI transactions by making those transactions look like non-Delaware transactions. The Delaware Supreme Court has been clear that because human life wagering violates Delaware's Constitution and public policy, courts must look past a transaction's form to its substance. *PHL v. Price Dawe*, 28 A.3d 1059, 1071 (Del. 2011). Indeed, because "STOLI schemes are created to feign technical compliance

9

with insurable interest statutes"—and the "insurable interest requirement serves the substantive goal of preventing speculation on human life"—Delaware law "requires more than just technical compliance at the time of issuance" and rejects any "formalistic cover for what in substance amounts to a wager." *Id.* at 1071, 1074. To interpret Delaware's statutes otherwise, would lead to the "absurd," and incorrect, result of permitting unconstitutional wagers. *Id.* at 1070-71.

Here, the Estate has alleged a viable a claim under Delaware law because the transaction substantively targeted Delaware. The technical Florida nexus was a form-over-substance ruse—the very "formalistic cover" the Delaware Supreme Court rejects—and allowing Defendants to get away with a Delaware-targeted human life wager based on some well-timed technicality "would result in an illogical triumph of form over substance that would completely undermine the policy goals behind the insurable interest requirement." *Id*. at 1070, 1074.

To be sure, Delaware's General Assembly has taken the forceful step of including an express choice-of-law directive within its Insurable Interest Statute, 18 Del. C. § 2704. Specifically, subsection (g) states: "The existence of an insurable interest with respect to a…trust-owned life insurance policy shall be governed by this section without regard to an insured's state of residency or location," and subsection (e)(4) defines a "trust-owned life insurance policy" as one that was "issued for delivery in [Delaware] to a trust established under the laws of this

10

[Delaware] and having a trustee with its principal place of business in [Delaware]." *Id.* § 2704(e)(4). Here, the Policy, as alleged, satisfies this definition. But even if it turns out that the STOLI promoters were clever enough to wait until shortly after the Policy was delivered to formally change the Trust's situs to Delaware, that does not mean that Delaware law is not triggered. In both scenarios, the substance of the transaction is the same: Delaware trusts and trustees were used to carry out a human life wagering schemes that violate Delaware's Constitution and public policy.

Defendants' argument that the Policy was "issued for delivery" in Florida because the Policy included certain Florida forms also lacks merit. Insurance is a regulated industry, and thus insurers must make presumptive decisions about which state's regulations they will conform to while administering a policy, which is often done, as it appears to have been done here, by referring to the state where the application says it was signed. This is not the same thing as the factual question of where a policy is delivered or issued for delivery. Nor is an insurer's decision to administer a particular policy in conformity with a particular state's regulations the same thing as an expectation or agreement that a particular state's law will govern in litigation where, as here, multiple states are alleged to have an interest. *AEI Life v. Lincoln*, 892 F.3d 126, 132–35 (2d Cir. 2018) (citing cases).

Indeed, courts in STOLI cases often resolve conflict-of-law disputes by applying the law of a state other than the "issue state." In *Seck*, for example, the

11

policy was applied for on New Jersey forms with New Jersey fraud warnings and was issued on New Jersey paper, but this Court chose to apply Delaware law because it was more developed and because Delaware had the most significant relationship. *Brighthouse Life v. Geronta Funding*, 2019 WL 8198323, at *1-2 n.8 (Del. Super. 2019) ("*Seck*"). And the Delaware Supreme Court later used *Seck* as a platform to answer novel questions of Delaware STOLI law. *Geronta Funding v. Brighthouse Life*, 284 A.3d 47 (Del. 2022). Likewise, in *Malkin*, a Florida federal court applied Delaware law to void a STOLI policy issued on "Florida-specific forms" with "'FL' designations" and notices. *Sun Life v. U.S. Bank*, 2016 WL 161598, at *10-13 (S.D. Fla. 2016), *aff'd,* 693 F. Appx. 838 (11th Cir. 2017) ("*Malkin*"). In *AEI*, the Second Circuit held New York law applied to a STOLI policy, even though it was "printed on 'New Jersey forms'" and designated as having "Issue State: New Jersey. 892 F.3d at 135. And in *Wilmington Trust v. Lincoln Benefit*, a court held Florida law applied, even though the policy had been issued on Delaware forms. 2018 WL 6308687, at *4-5 (S.D. Fla. 2018).

*Finally*, Defendants' invitation for this Court to conduct a most significant relationship test on the pleadings without a full factual record is premature. To the extent the Court were to do so, the most significant relationship is with Delaware. At inception, the place of performance was Delaware because, had Long died while the Trust owned the Policy, any proceeds would have been paid to the Trust in

Delaware. The Policy has been continuously held in Delaware since inception; WSFS made its death claim from Delaware; and WSFS is seeking to collect the death benefit in Delaware. All the Policy's beneficial owners have been Delawareans: Ocean Gate was a Delaware L.P.; EP Legacy Trust C was a Delaware trust; and BroadRiver is a Delaware entity. The Policy's record owners have also been Delaware entities: The Trust was a Delaware entity, and WSFS is a Delaware bank. No Florida person or entity has ever owned the Policy, not even for a moment.

Delaware also has a paramount constitutional interest in policing violations of its insurable interest statute, its public policy, and its constitution perpetrated in Delaware through a Delaware trust to prevent a Delaware bank (WSFS) from collecting STOLI proceeds on behalf of a Delaware investor (BroadRiver) that holds the Policy in a securities account in Delaware. An order enforcing this Policy would violate Delaware's Constitution. *Wilmington Trust v. Sun Life*, 294 A.3d 1062, 1072 (Del. 2023). By contrast, Florida, has no interest in applying its laws to enforce a STOLI policy, *see* Fla. Stat. § 627.404, and no interest in helping a Delaware bank, and its Delaware client, avoid their own state's law.

The original parties' reasonable expectations also support application of Delaware law. The Trust wanted the Policy to be governed by Delaware law, FAC ¶¶ 39-45, Ocean Gate wanted the Policy governed by Delaware law, *id*. ¶ 33, and discovery will likely show that Ocean Gate carried the Policy as a Delaware policy.

13

Moreover, "certainty, predictability, and uniformity of result" point to Delaware law because, over the past decade, the Delaware Supreme Court has developed a robust body of case law to address STOLI policies that is easy to apply. *See supra*.

Defendants argue that Restatement § 192 provides a rebuttable presumption that Florida law applies because Long lived there. Not so. By its own terms, Restatement § 192 only applies to policies "issued ***to the insured*** upon his application." (emphasis added). The official comments are clear: "The rule does not apply to life insurance issued upon the life of someone other than the applicant." Restatement § 192 cmt. a. Here, the Policy was applied for by, issued to, and owned by the Trust, not Long; thus § 192 does not apply. *See U.S. Bank v. Sun Life*, 2016 WL 8116141, at *14 (E.D.N.Y. Aug. 30, 2016) (rejecting § 192 presumption, and applying Delaware law, in a STOLI case because "the applicant for the Policy was the Delaware Trust, not [the insured]"). In fact, insureds' residences are entitled to almost no weight in STOLI cases since, as here, STOLI insureds are used by investors as mere "vessels." *Sun Life v. Wells Fargo*, 2016 WL 5746352, at *9 (D.N.J. Sept. 30, 2016), *aff'd*, 779 F. Appx. 927 (3d Cir. 2019); *Lincoln v. Retirement Value*, 2022 WL 17554986, at *4 n.5 (D.N.J. Dec. 9, 2022); *Lifepark v. Sun Life*, 2023 WL 4108692, at *5 (Mass. Super. June 6, 2023). This is reflected, of course, in the Delaware Insurable Interest Statute's command that Delaware "trust-owned

life insurance policies **shall** be governed by this section **without regard to an insured's state of residency or location**." 18 Del. C. § 2704(g) (emphasis added).

### C.     The Estate Alleges A Viable Alternative Claim Under Florida Law.

Defendants do not dispute that, if Florida law applies, the Policy lacked insurable interest at inception under Florida law; instead, Defendants contend the Estate cannot bring a claim to recover the Policy's benefits under Florida law because Fla. Stat. § 627.404(4) was not enacted until 2008. Not so.

*First*, the Estate is not seeking retroactive application of § 627.404(4) because the Estate's claim thereunder did not accrue until the Policy's benefits were received by Defendants in 2022—more than 10 years **after** the statute was passed. Indeed, the remedy in § 627.404(4) accrues: "If the beneficiary, assignee, or other payee" "receives" them "by reason of the [insureds] death." The presumption against retroactive application of statutes is inapposite where, as here, the claim accrues after the legislation is effective. *Love v. State*, 286 So.3d 177, 186-87 (Fla. 2019); *Lieberman v. Cambridge*, 432 F.3d 482, 487-88 (3d Cir. 2005) ("Retroactive application of a new statute…occurs whenever the statute is applied to causes of action already accrued prior to its enactment date."). *Atkinson v. Wal-Mart Stores*, 2009 WL 1458020 (M.D. Fla. May 26, 2009), is inapposite because in that case, the

policy benefits were "obtained prior to the enactment of the amendments." 349 Fed. App'x 426 (11th Cir. 2009).

*Second*, the Estate can also sue under Florida's common law. In 1892, Florida statutorily prohibited gambling. Fla. Stat. § 849.08. Moreover, the Florida Supreme Court has long extended this prohibition to life insurance contracts lacking an insurable interest, characterizing them as unlawful wagers. *E.g., Knott v. State*, 186 So. 788, 789-90 (Fla. 1939) ("[A] contract of insurance upon a life in which the insurer has no interest is a pure wager, that gives the insurer a sinister counter interest in having the life come to an end."); *Meerdink v. Am. Ins.*, 188 So. 764, 766 (Fla. 1939); *Life Ins. v. Lopez*, 443 So. 2d 947, 948 (Fla. 1983).

No Florida court has held that the right to challenge the absence of insurable interest belongs exclusively to insurers. Instead, Florida law has consistently recognized that policies issued without an insurable interest are not merely voidable—they are void as a matter of public policy. *Meerdink*, 188 So. at 766 ("[A] policy issued when there is no such [insurable] interest is void."); *Schneberger v. Wheeler*, 859 F.2d 1477, 1480 (11th Cir. 1988). Consequently, any party with a stake in the validity of such a policy—be it an insurer or an estate—may raise an insurable interest challenge under Florida common law—which is an independent basis for the Estate's alternative claim.

*Third*, when the Policy was procured in 2006, Florida's Insurable Interest Statute, § 627.404 (2005), contained only two narrow provisions, neither of which restricted who could raise an insurable interest challenge. Thus, such challenges by estates were not barred by statute, and remained available under the common law. Indeed, had the common law (or the prior insurable interest statute) been otherwise, then when § 627.404(4) was enacted in 2008, the legislature would needed to have made clear it was abrogating and thus changing the prior law. *Price Dawe*, 28 A.3d at 1072-73; *see also Gonzales v. City of Belle*, 287 So. 2d 669, 670 (Fla. 1973).

But Florida's legislature said the opposite: When it amended § 627.404 in 2008, it did so through a bill "expressly intended to clarify current Florida law relating to insurable interests and the purchase of life insurance." Ex. 4, Bill Analysis, Sen. Bill 648, Mar. 24, 2008, at 1; 2008 Fla. Laws Ch. 2008-36 § 2, *codified at* Fla. Stat. § 627.404 (2008) ("The amendments to s. 627.404, Florida Statutes, made by this act are intended to clarify existing law."). As the history of these amendments makes clear, it had always been the common law in Florida that human life wagering through insurance was illegal and against public policy. *See* Ex. 4 at 2 (allowing one without insurable interest to create a policy on another's life "tempt[s] [them] to bring about the demise of the other person"). Because the 2008 amendments were expressly intended to "clarify" what already was Florida's common law, those amendments did not displace the common law, but rather

17

codified and supplemented it, thus making the amendments relevant to policies issued prior to their effective date.

*Fourth*, the only time the Florida Supreme Court has interpreted the 2008 amendments to § 627.404 was in *Wells Fargo v. Pruco*, 200 So. 3d 1202 (Fla. 2016). *Pruco* involved three life insurance policies issued in 2005 and 2006. Nevertheless, both the Court and the parties consistently relied on the amended 2008 version of the statute. Defendants' assertion (Br. at 14-15) that *Pruco* applied the 2005 version is incorrect. The Court quoted—verbatim—the "procured or caused to be procured" language that appears only in the 2008 amendments, a phrase absent from the statute at the time the policies were issued. 200 So. 3d at 1205. This was not a passing reference; it was central to the Court's analysis regarding who must possess an insurable interest at the time of policy procurement. Further, *Pruco* cited and examined several other provisions added by the 2008 amendments, including the amended definition of "insurable interest," reinforcing the conclusion that the Court treated the amended statute as a codification of existing common law and applicable to pre-2008 policies. In doing so, the Florida Supreme Court implicitly endorsed the view that the 2008 amendments were clarifying in nature, not substantive changes, consistent with the Florida legislature's stated intent.

*Fifth*, even if the 2008 amendments are not viewed solely as clarifications, and even if application is considered retroactive, § 627.404(4) would still apply

retroactively because it is remedial in nature. *Love*, 286 So.3d at 186-87. Section 627.404(4) sets forth a remedial, procedural path for estate representatives to recover STOLI proceeds. It does not establish a new right, but rather codifies an enforcement mechanism for a longstanding public policy rooted in Florida common law.

### D.    Defendants' Capacity Argument Is Meritless.

Defendants claim § 2704(b) should be limited to actions by *Delaware-appointed* executors, and only then if the dollar bills that represent the STOLI death benefit are located within Delaware. This is meritless and re-writes the statute. As the Delaware Supreme Court explained, the plain language of "Section 2704(b) confers standing on the estate." *Wells Fargo v. Estate of Malkin*, 278 A.3d 53, 61 (Del. 2022); *Lavastone v. Estate of Berland*, 266 A.3d 964, 969 (Del. 2021) ("2704(b) directs that if a death benefit is paid under an insurance policy that lacks an insurable interest, the estate of the insured may recover the death benefit from the recipient."); *id*. at 974 (§ 2704(b) "provides that an estate may maintain an action to recover death benefits paid on a life-insurance policy that was procured in violation of the insurable-interest requirement").

Moreover, § 2704(b) says nothing about the location of the death benefit, let alone that the money must be found in Delaware. To read that as a requirement under § 2704(b) would be absurd because a claim could be defeated, and the Delaware Constitution defiled, by simply moving the money out of Delaware.

19

Defendants rely heavily on *Frank v. Wells Fargo*, 620 F. Supp. 3d 1024 (C.D. Cal. 2022), but *Frank* is distinguishable because, there, the insured's son failed to get appointed executor of the estate by *any* court. *Id*. at 1027. Thus, his initial complaint was dismissed because there was *no* estate; however, once he was appointed by a California court, he refiled his § 2704(b) case in this Court, where it has been pending for years; Judge Hall certified (unrelated) questions of law to the Delaware Supreme Court; and they were recently accepted. *Estate of Frank v. GWG DLP Master Tr.*, No. 1:23-cv-00584-JLH/No. 110, 2025. Judge Hall and the Delaware Supreme Court apparently have no concern that the California estate lacks capacity/standing. Indeed, all of the prior § 2704(b) cases litigated in the Delaware Supreme Court have involved non-Delaware insureds and non-Delaware estates.

Regardless, the Delaware Supreme Court has long recognized that comity principles give full effect and authority to letters of administration issued by the decedent's home state. *Fidelity Ins. v. Niven*, 10 Del. 416, 425 (Del. 1878); *N.Y. Tr. Co. v. Riley*, 16 A.2d 772, 786 (Del. 1940). Thus, the Estate's Florida appointment permits the Estate to maintain its action in Delaware. Out of an abundance of caution, Keiser-Long is obtaining Letters of Ancillary Administration from the Register of the Wills of New Castle County. FAC ¶ 3; 12 Del. C. §§ 1565-66. Therefore, even if Defendants were correct (they are not) that the Estate must obtain ancillary

administration authority to maintain this action, any such putative deficiency will soon be cured, as appropriate under Rule 17.

### E.    A More Definite Statement Is Not Needed.

Rule 12(e) motions are appropriate only where a pleading is so vague that the defendant "cannot reasonably prepare a response." *Schaedler v. Reading Eagle*, 370 F.2d 795, 798 (3d Cir. 1967). Defendants do not allege this here, let alone that they lack notice of the Estate's claims, so their argument fails.

## V.    CONCLUSION

Defendants' motion should be denied.

**COZEN O'CONNOR**

Dated:  June 26, 2025

*/s/  Nathan Barillo*
Kaan Ekiner (No. 5607)
Nathan Barillo (No. 5863)
1201 North Market Street, Suite 1001
Wilmington, DE 19801
(302) 295-2046/2048
kekiner@cozen.com
nbarillo@cozen.com

-and-

Michael J. Miller (*pro hac vice*)
Brian D. Burack (*pro hac vice*)
Kara E. Cheever (*pro hac vice*)
1650 Market Street, Suite 2800
Philadelphia, PA 19103

*Attorneys for Plaintiff,*
*the Estate of Ewell E. Long*