# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

THE ESTATE OF EWELL E. LONG, BY ITS
PERSONAL REPRESENTATIVE, CAROL
A. KEISER-LONG,

    Plaintiff,

v.

WILMINGTON SAVINGS FUND SOCIETY,
FSB; BROADRIVER III, LP; AND COOK
STREET MASTER TRUST III,

    Defendants.

C.A. No. 25-358-MN

### DEFENDANT WILMINGTON SAVINGS FUND SOCIETY, FSB'S
### REPLY BRIEF IN SUPPORT OF ITS
### MOTION TO DISMISS THE FIRST AMENDED COMPLAINT[1]

**K&L GATES LLP**

*/s/ Steven L. Caponi*
Steven L. Caponi (No. 3484)
Robert K. Beste (No. 3931)
Matthew B. Goeller (No. 6283)
Michael J. Vail (No. 6994)
600 N. King Street, Suite 901
Wilmington, DE 19801
Phone: (302) 416-7000
steven.caponi@klgates.com
robert.beste@klgates.com
matthew.goeller@klgates.com
michael.vail@klgates.com

Dated: July 17, 2025

*Attorneys for Defendant Wilmington Savings Fund Society, FSB*

---

[1] The capitalized terms used herein have the same meanings assigned them in Securities Intermediary's Opening Brief in Support of its Motion to Dismiss (D.I. 32).

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................. 1

II.  ARGUMENT ........................................................................................................ 1

    A.  Securities Intermediary Is Not Liable Under the Plain Terms of Delaware's Section 2704(b) or Florida's Section 627.404(4) ...................... 1

    B.  U.C.C. Section 8-115 Provides a Securities Intermediary Cannot Be Liable to a Person Having an Adverse Claim to Financial Assets Held on Behalf of Its Customer ............................................................................ 4

    C.  The McCarran-Ferguson Act Does Not Apply and the Estate's Claims Significantly Interfere with Securities Intermediary's Financial Intermediary Power ................................................................................... 5

III. CONCLUSION .................................................................................................... 8

## TABLE OF AUTHORITIES

**Cases**

*Abel v. KeyBank USA, N.A.*,
   313 F. Supp. 2d 720 (N.D. Ohio 2004) ................................................................................. 7

*Cantero v. Bank of Am., N.A.*,
   602 U.S. 205 (2024) ............................................................................................................ 6, 7

*Est. of Cappelli v. U.S. Bank Nat'l Ass'n*,
   2025 WL 676453 (D. Minn. Mar. 3, 2025) ............................................................................ 4

*Est. of Frank v. GWG DLP Master Tr. Dated 03/01/06*,
   2024 WL 4298937 (D. Del. Sept. 26, 2024) .......................................................................... 3

*Estate of Daher v. LSH CO*,
   2024 WL 3571642 (C.D. Cal. July 23, 2024) ........................................................................ 3

*Franklin Nat'l Bank of Franklin Square v. New York*,
   347 U.S. 373 (1954) ............................................................................................................... 7

*Humana Inc. v. Forsyth*,
   525 U.S. 299 (1999) ............................................................................................................... 5

*Inv. Co. Inst. v. Camp*,
   401 U.S. 617 (1971) ............................................................................................................... 7

*NationsBank of N. Carolina, N.A. v. Variable Annuity Life Ins. Co.*,
   513 U.S. 251 (1995) ............................................................................................................ 6, 7

*United States v. Dep't of Ins.*,
   66 F.4th 114 (3d Cir. 2023) ................................................................................................... 5

*Wells Fargo Bank, N.A. v. Est. of Malkin*,
   278 A.3d 53 (Del. 2022) ..................................................................................................... 3, 4

**Statutes**

12 U.S.C. § 24 (Seventh) ............................................................................................................. 6

15 U.S.C. § 1012(b) ..................................................................................................................... 5

18 Del. C. § 2704(b) ................................................................................................. 1, 2, 3, 5, 6

Fla. Stat. § 627.404(4) .............................................................................................. 1, 2, 3, 5, 6

U.C.C. § 8-102(a)(14) ............................................................................................................. 2

U.C.C. § 8-115 ................................................................................................................. 1, 2, 4

U.C.C. § 8-115 cmt. 2 ........................................................................................................... 2, 4

U.C.C. § 8-115 cmt. 3 ............................................................................................................... 2

U.C.C. § 8-503 .......................................................................................................................... 2

## I. INTRODUCTION

Securities Intermediary did not "receive" the "benefits" from the Policy at issue, never held a possessory interest in the Benefit Proceeds, and cannot be compelled to pay the Estate money Securities Intermediary never had under the plain terms of 18 Del. C. § 2704(b) or Fla. Stat. § 627.404(4). Additionally, the Estate has brought an "adverse claim" against Securities Intermediary, which Securities Intermediary cannot be liable for under U.C.C. § 8-115. The Estate is wrong in arguing that agents can be held liable for acts they commit on behalf of their principals. Finally, the McCarran-Ferguson Act does not apply because the challenged conduct underlying the Estate's claims against Securities Intermediary is financial intermediation, which does not affect the relationship between the insured and the insurance company or constitute conduct in the business of insurance. Applying the National Bank Act and Home Owners' Loan Act of 1933 to preempt the Estate's claims against Securities Intermediary also will have no bearing on the Estate's ability to pursue its claim under Delaware's Section 2704(b) or Florida's Section 627.404(4) against a party that did "receive" the "benefits" from the Policy. For all these reasons, the Court should grant Securities Intermediary's Motion in its entirety.

## II. ARGUMENT

### A. Securities Intermediary Is Not Liable Under the Plain Terms of Delaware's Section 2704(b) or Florida's Section 627.404(4)

The Estate's Opposition fails to adhere to the plain language of Delaware's Section 2704(b) and Florida's Section 627.404(4), which provide that the estate of a decedent "may maintain an action" against "the beneficiary, assignee, or other payee" who "receives from the insurer any benefits" of a life insurance policy on the decedent in violation of the insurable interest requirement. Securities Intermediary is not a proper defendant to the Estate's claims because Securities Intermediary never had an interest in the Benefit Proceeds and does not have, and never received,

the "benefits" of the Benefit Proceeds.

The Estate concedes Securities Intermediary promptly transferred the Benefit Proceeds to Cook Street Master Trust III. Opp. at 5. Securities Intermediary therefore did not "receive" the proceeds. Securities Intermediary merely maintains securities accounts on the entitlement holder's behalf. U.C.C. § 8-102(a)(14). The assets held by a securities intermediary are not the securities intermediary's property. U.C.C. § 8-503; *see also* U.C.C. § 8-115 cmt. 2 (policy protecting securities intermediaries is similar to rules protecting agents and bailees).

The fact Securities Intermediary does not have the Benefit Proceeds does not mean the Estate is without remedies under the law. For example, the Estate could have sought to restrain Securities Intermediary from passing along the Benefit Proceeds to Cook Street Master Trust III, which is a possibility the U.C.C. contemplates. *See* U.C.C. § 8-115 (noting a securities intermediary may be liable to an adverse claimant if the securities intermediary transferred a financial asset after an injunction); U.C.C. § 8-115 cmt. 3 ("securities intermediary is privileged to act on the instructions of its customer or entitlement holder, unless it has been served with a restraining order or other legal process enjoining it from doing so."). The Estate chose not to. Alternatively, the Estate could have made a demand on PHL before the death benefit was paid out. The Estate chose not to do so. However, the Estate *has* pursued recovery of the Benefit Proceeds from Cook Street Master Trust III in this action. Delaware's Section 2704(b) and Florida's Section 627.404(4) and the U.C.C. make clear that the Estate cannot recover from Securities Intermediary, which does not possess the Benefit Proceeds. Moreover, the Estate acknowledges U.C.C. § 8-503 "provides that a securities intermediary's customer's assets are not the securities intermediary's property." Opp. at 7. Therefore, the Estate must look to the party with the actual beneficial ownership for its alleged recovery.

The Estate incorrectly argues Securities Intermediary was a "payee." Opp. at 8. The plain language of Delaware's Section 2704(b) and Florida's Section 627.404(4) confirm Securities Intermediary would not be liable to an estate if Securities Intermediary—acting on behalf of and at the direction of the beneficial owner—passes the proceeds to the beneficial owner. As the Supreme Court of Delaware noted in interpreting Section 2704(b), if a securities intermediary "after receiving the Policy proceeds, merely passed them on in full" it "would appear to have no liability." *Wells Fargo Bank, N.A. v. Est. of Malkin*, 278 A.3d 53, 67 (Del. 2022).[2]

The Estate is wrong about the applicability of *Estate of Daher v. LSH CO*, 2024 WL 3571642 (C.D. Cal. July 23, 2024) on the liability of securities intermediaries as well. In deciding summary judgment, the *Daher* court recognized *Malkin* on the point that "when a securities intermediary passes along 100% of a STOLI policy's death benefit to another party, the intermediary cannot be deemed a payee," but found there was a question of fact whether the securities intermediary "passed along 100% of the Policy's death benefit." *Daher*, 2024 WL 3571642, at *3. Here, unlike in *Daher*, the Estate is not alleging Securities Intermediary did not pass 100% of the Benefit Proceeds to Cook Street Master Trust III.[3]

---

[2] In making this statement the *Malkin* Court emphasized that it had only addressed the specific certified questions in that case and was not holding that a party is liable under 18 Del. C. § 2704(b) when it is paid policy proceeds solely in its capacity as a securities intermediary and then deposits those proceeds in its customer's account. *See Malkin*, 278 A.3d at 67.

[3] The Estate also fails to address a recent decision applying this analysis and rejecting an estate's argument that a bank acting in a representative capacity can be held liable under Delaware's Section 2704(b) when it is paid policy proceeds purely in such capacity. *See Est. of Frank v. GWG DLP Master Tr. Dated 03/01/06*, 2024 WL 4298937, at *2 (D. Del. Sept. 26, 2024). In *Frank*, the court explained that since Wells Fargo as Trustee had been paid the policy proceeds sought by the estate "only in its capacity as a trustee of the trust," "Wells Fargo was not the 'payee' of the proceeds within the meaning of § 2704(b); the trust was." *Id.* The same analysis applies here. Just as in *Frank*, Securities Intermediary here did not "receive" the Benefit Proceeds within the meaning of Delaware's Section 2704(b) or Florida's Section 627.404(4)—its customer did—and Securities Intermediary is thus not an appropriate defendant for the Estate's claims.

3

> **B.** **U.C.C. Section 8-115 Provides a Securities Intermediary Cannot Be Liable to a Person Having an Adverse Claim to Financial Assets Held on Behalf of Its Customer**

As Securities Intermediary argued in its Opening Brief (D.I. 32), the Delaware Supreme Court's decision in *Malkin* is not controlling or applicable here because New York law governs Securities Intermediary's role as a securities intermediary, and in any event, Securities Intermediary is not in possession of the Benefit Proceeds. Notwithstanding the inapplicability of *Malkin*, the Estate misrepresents *Malkin* in arguing that agents can be held liable for acts they commit on behalf of their principals. Opp. at 12. *Malkin* affirmed that "general tort law protects agents or bailees who act on the instructions of their principals or bailors." *Malkin*, 278 A.3d at 67 (quoting 6 Del. C. § 8-115 cmt. 2). The *Malkin* court did not hold that Delaware's estate claims statute overrides the fundamental blackletter law that an agent is not liable for its principal. *Id.*

The Estate has not alleged any facts that would show Securities Intermediary performed any function beyond its limited, ministerial role. Neither has the Estate alleged that any of the three exceptions to U.C.C. Section 8-115's protections against adverse claims are applicable here. The District of Minnesota decisions in *Cappelli*, *Jacobs*, *Hopfinger*, and *Breslin* are instructive on the application of U.C.C. Section 8-115, under which the court dismissed the estate's claims. As the District of Minnesota court noted, "Plaintiff Estate has not alleged facts that that would satisfy any of the three exceptions to Section 408.115. In particular, Plaintiff Estate has not alleged facts sufficient to show the existence of a court order or injunction, any act of collusion, or the existence of a stolen security certificate. Indeed, Plaintiff Estate has not alleged any facts that would show that U.S. Bank as Securities Intermediary performed any function beyond a limited, ministerial role. Accordingly, all claims against U.S. Bank are properly dismissed." *Est. of Cappelli v. U.S. Bank Nat'l Ass'n*, 2025 WL 676453, at *8-9 (D. Minn. Mar. 3, 2025). The same is true here, as the Estate has not alleged any facts in support of a U.C.C. Section 8-115 exception.

      **C.**      **The McCarran-Ferguson Act Does Not Apply and the Estate's Claims Significantly Interfere with Securities Intermediary's Financial Intermediary Power**

The McCarran-Ferguson Act "provides that a federal statute will not pre-empt a state statute enacted 'for the purpose of regulating the business of insurance'—unless the federal statute 'specifically relates to the business of insurance.'" *Barnett Bank v. Nelson*, 517 U.S. 25, 27-28 (1996) (quoting 15 U.S.C. § 1012(b)). The Estate is wrong that the challenged conduct here constitutes the business of insurance. As noted in *United States v. Dep't of Ins.*, 66 F.4th 114, 129-30 (3d Cir. 2023) ("*DOI*"), the "challenged conduct" is the specific fact pattern motivating the suit, and here, that is financial intermediation— facilitating the transfer of the Benefit Proceeds to the beneficial owner—which does not involve any transfer of risk from insured to insurer, is entirely incidental to the relationship between insurer and insured, and outside the insurance industry.

Additionally, the application of federal banking law on preemption here does not directly conflict with Delaware's Section 2704(b) or Florida's Section 627.404(4), which allow the Estate to seek the Benefit Proceeds only from one who "receives from the insurer any benefits thereunder." *See Humana Inc. v. Forsyth*, 525 U.S. 299, 310 (1999) ("when application of the federal law would not frustrate any declared state policy or interfere with a State's administrative regime, the McCarran-Ferguson Act does not preclude its application."). Here, Securities Intermediary did not "receive" the "benefits" from the Policy at issue, and never held a possessory interest in the Policy or its proceeds. Applying federal banking law to preempt the Estate's claims against Securities Intermediary does not interfere with or have any bearing on the Estate's ability to pursue their claim under Delaware's Section 2704(b) or Florida's Section 627.404(4) against a party that did "receive" the "benefits" from the Policy.

Because Delaware's Section 2704(b) and Florida's Section 627.404(4) would expose federal savings banks, like Securities Intermediary, to prohibitive liability for serving as securities

intermediaries, Delaware's Section 2704(b) and Florida's Section 627.404(4) significantly interfere with the exercise of federally authorized banking powers. *See Cantero v. Bank of Am., N.A.*, 602 U.S. 205, 220 (2024). The Estate's contrary arguments fail.

Federal law authorizes federal savings banks to act as financial intermediaries to buy and sell various financial investment instruments. Securities Intermediary exercises the same financial intermediary powers that the National Bank Act confers upon national banks, and the National Bank Act explicitly provides that federally chartered banks may engage in the business of dealing in financial assets like stock and such business "shall be limited to purchasing and selling such securities and stock without recourse, solely upon the order, and for the account of, customers[.]" 12 U.S.C. § 24 (Seventh). The National Bank Act broadly empowers federally chartered banks to "exercise . . . all such incidental powers as shall be necessary to carry on the business of banking." *Id.* The Supreme Court has confirmed this includes "brokerage of financial investment instruments" in an agency capacity. *See NationsBank of N. Carolina, N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 259 (1995). Accordingly, federally chartered banks, like Securities Intermediary, carry out all of their functions by virtue of their federal charters and the powers granted by the National Bank Act and Home Owners' Loan Act of 1933. *See Cantero*, 602 U.S. at 209-10. State law is not the source of any of their banking powers, and while national banks operate against the backdrop of state law, state law is preempted when it interferes with national banks' federally granted powers. *See id.* at 215-16.

The Estate wrongly suggests the National Bank Act does not empower Securities Intermediary to serve as a securities intermediary for life insurance policies. Opp. at 23. The Estate's analysis is misplaced. The Supreme Court has held that "securities" as used in the National Bank Act should be interpreted with "breadth" rather than "narrow[ly]." *Inv. Co. Inst. v.*

*Camp*, 401 U.S. 617, 635 (1971). Moreover, Congress's grant of "incidental powers" gives national banks the authority to act as agents for a variety of financial investment instruments in their role as financial intermediaries. *See NationsBank*, 513 U.S. at 257. This broad category more than covers the Policy at issue here. While "[v]entures distant from dealing in financial investment instruments—for example, operating a general travel agency—may exceed th[e] bounds" of a national bank's intermediary power, *id.* at 258 n.2, the Estate cannot plausibly contend that the Policy Securities Intermediary intermediated here—making a claim for and transferring proceeds from a bilateral contract to the entitlement holder—does not qualify as the type of "investment instrument" or "security" broadly countenanced by the National Bank Act.

Subjecting a federal savings bank intermediary to liability based on the alleged impropriety of its customer's transaction would hamper the bank's ability to act as an intermediary because it would force the bank to scrutinize the propriety of every instruction to avoid potential liability that far exceeds the fees it earns on such services. As the court found in *Abel v. KeyBank USA, N.A.*, 313 F. Supp. 2d 720, 727 (N.D. Ohio 2004), imposing liability in this way "essentially requires national banks to become insurers," transforming the risk the bank faces and the corresponding value of the transaction to the bank. The Estate argues that national banks could simply pass the risk on to the beneficial owner through an indemnification clause, Opp. at 24, but indemnification is never frictionless or guaranteed, and, even if successful, does not eliminate the interference of the Estate's claims.

As the Supreme Court held in *Franklin Nat'l Bank of Franklin Square v. New York*, 347 U.S. 373 (1954)—the "paradigmatic example of significant interference," *Cantero*, 602 U.S. at 216—a state law is preempted if it "interfere[s] with [a] national bank's ability to [exercise its power] efficiently." *Id.* at 216. Requiring federally chartered banks to either implement onerous

procedures to ensure compliance with every insurance contract they intermediate or risk exposure to liability far in excess of the value of such transactions goes well beyond a mere reduction of efficiency and is "paradigmatic" unlawful state interference.

## III. CONCLUSION

For the foregoing reasons, the Court should dismiss the First Amended Complaint in its entirety with prejudice as to Securities Intermediary and grant such other and further relief as the Court deems just and proper under the circumstances.

Dated: July 17, 2025

**K&L GATES LLP**

<u>/s/ Steven L. Caponi</u>
Steven L. Caponi (No. 3484)
Robert K. Beste (No. 3931)
Matthew B. Goeller (No. 6283)
Michael J. Vail (No. 6994)
600 N. King Street, Suite 901
Wilmington, DE 19801
Phone: (302) 416-7000
steven.caponi@klgates.com
robert.beste@klgates.com
matthew.goeller@klgates.com
michael.vail@klgates.com

*Attorneys for Defendant Wilmington Savings Fund Society, FSB*